# EXHIBIT 2

RECEIVED FOR FILING
KITSAP COUNTY CLERK

JUN 2 6 2019

ALISON H. SONNTAG

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KITSAP

1 9 - 2 - 0 1 8 1 8 - 1 8

FRANK SHAW,

     Plaintiff,

v.

CITY OF BREMERTON POLICE
DEPARTMENT, department within The
City of Bremerton,

     Defendant.

No.

**COMPLAINT FOR DAMAGES**

I. DISCRIMINATION BASED ON
DISABILITY (DISPARATE
TREATMENT) - RCW § 49.60

II. HOSTILE WORK ENVIRONMENT
BASED ON DISABILITY - RCW §
49.60

III. RETALIATION – DISCRIMINATION
AGAINST EMPLOYEE OPPOSING
UNFAIR PRACTICE - RCW § 49.60

IV. FMLA/WA STATE FAMILY LEAVE
ACT RETALIATION – 29 U.S.C. §
2615

V. CONSTRUCTIVE DISCHARGE –
WA STATE COMMON LAW TORT

COMPLAINT FOR DAMAGES - 1

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1

2

3

4

COMES NOW the Plaintiff, FRANK SHAW, by and through his attorney of record,

STEPHANIE HENDERSON STOCKER of HENDERSON LAW GROUP, PLLC, and states his

cause of action against the Defendant, as follows:

## I.   NATURE OF THE CASE

5

6

7

8

9

10

11

12

1.1    This is an action for relief brought by Plaintiff Mr. FRANK SHAW ("Plaintiff

SHAW") against his former employer, Defendant City of Bremerton Police Department

("Defendant BPD"), for ongoing and continuous, unlawful employment practices against

Plaintiff SHAW during his employment, culminating in the adverse action of Plaintiff SHAW's

unlawful retaliation.  Plaintiff SHAW alleges that Defendant BPD, by and through its agents and

representatives, unlawfully:

13

14

A. **DISCRIMINATED AGAINST PLAINTIFF SHAW BASED ON HIS DISABILITY IN VIOLATION OF:**

- RCW §49.60, the WA State Law Against Discrimination ("WLAD").

15

16

17

18

B. **CREATED/PERPETUATED       A       HOSTILE       WORK ENVIRONMENT BASED ON PLAINTIFF SHAW'S DISABILITY IN VIOLATION OF:**

- RCW §49.60 (WLAD).

19

20

21

22

23

C. **RETALIATED AGAINST PLAINTIFF SHAW** after he filed complaints in opposition of Defendant BPD's discrimination based on his disability as well as after he reported his supervisors for posting racially charged comments online, in violation of:

- RCW 49.60 (Discrimination Against Person Opposing Unfair Practice Protected by WLAD).

24

25

26

COMPLAINT FOR DAMAGES - 2

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

D. **RETALIATED AGAINST PLAINTIFF SHAW** after he took time away from work due to the Family Medical Leave Act ("FMLA") and WA State Family Leave Act, in violation of:

- 29 U.S.C. § 2615 (Retaliation).

E. **CONSTRUCTIVELY DISCHARGED PLAINTIFF SHAW IN VIOLATION OF WA STATE COMMON LAW TORT** when it terminated Plaintiff SHAW's employment after making working conditions so intolerable that a reasonable person in Plaintiff SHAW's position would have felt compelled to resign from his position.

This action seeks to provide relief to Plaintiff SHAW, who was adversely affected by such practices.

1.2     Defendant BPD's proffered reason for its adverse action of passing over Plaintiff SHAW for multiple promotions that he was more than qualified for was that Plaintiff SHAW abused sick leave and FMLA.  Interesting, since Plaintiff SHAW was never coached or reprimanded (much less even informed) by Defendant BPD about any work performance issues. Defendant BPD claims that, despite Plaintiff SHAW's twenty-three (23) year exemplary work performance for Defendant BPD, Plaintiff SHAW suddenly became a horrible employee in December 2015 which coincides with Plaintiff SHAW's FMLA use after his wife had unscheduled surgery and he was subsequently passed over for Sergeant position (apparently warranting his never getting promoted and even having his responsibilities changed) in following his complaints made in opposition to Defendant BPD's discrimination and retaliation. Defendant BPD has yet to provide evidence that Plaintiff SHAW performed poorly at work in 2015 to present. This is because Plaintiff SHAW didn't perform poorly at work, in fact Plaintiff SHAW didn't ever perform poorly at work for Defendant BPD during his twenty-three (23) years of employment.

**COMPLAINT FOR DAMAGES - 3**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1.3   As we will demonstrate to our jury, the facts demonstrate that Defendant BPD's proffered reason for its adverse actions against Plaintiff SHAW (i.e., Plaintiff SHAW showed poor work performance) is pretext for Defendant BPD's discriminatory animus towards Plaintiff SHAW based on his disability, his unaddressed complaints in opposition of racial posts on social media by supervisors, and disparate treatment against him by Defendant BPD during the promotional evaluations (as protected by WLAD/RCW § 49.60) and his raising concerns about questionable changes to the evaluation process by Defendant BPD.

## II.   PARTIES

2.1   Plaintiff SHAW is an individual, a resident of the State of Washington, Kitsap County, and former employee of Defendant BPD. As an "inhabitant" of the State of Washington, Plaintiff is protected from discrimination by the WA State Law Against Discrimination ("WLAD") (RCW 49.60).

2.2   Defendant BPD is an Emergency Management department of the City of Bremerton doing business in Bremerton, Kitsap County, Washington. At all relevant times, Defendant BPD was an employer within the meaning of RCW 49.60.040(11) and 42 U.S.C. §§2000e-(b). All acts and omissions of said Defendant's employees, supervisors, managers, agents and/or officers were performed within the course and scope of Plaintiff SHAW's employment and were performed for the benefit of said Defendant. The WLAD (RCW 49.60) applies to employers in Washington State with eight (8) or more employees and therefore applies to Defendant BPD. Defendant BPD was an employer and/or agent of employer engaged in an industry affecting commerce with fifteen or more employees for each working day in each of

COMPLAINT FOR DAMAGES - 4

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

twenty or more calendar weeks in the current or proceeding calendar year, acting in the interest of an employer who employs eight or more persons. 42 U.S.C. § 2000e – (b).

### III.    JURISDICTION AND VENUE

3.1    On September 24, 2018, in accordance with RCW 4.92.100, Plaintiff SHAW filed a Tort Claim Form with the City of Bremerton, thereby giving required notice of his facts giving rise to claims against Defendant BPD.

3.2    Pursuant to RCW 4.16.080(2), Plaintiff SHAW's pending lawsuit will be brought more than 60-days after the filing date of his Tort Claim Form and within the prescribed three-year WA State statute of limitations (three years following the most recent date of Defendant BPD's discrimination towards Plaintiff SHAW, which was September 5, 2018)

3.3    Jurisdiction is proper in this court pursuant to RCW 2.08.010.

3.4    Venue is proper in this court pursuant to RCW 4.12.020 and RCW 4.12.025.

### IV.    STATEMENT OF FACTS

4.1    Plaintiff SHAW is a Caucasian male born in 1966.  He is a longtime, well-respected citizen of the Bremerton community – a devoted husband and father who is the primary financial support for his wife.

### A.    SUMMARY: Plaintiff SHAW's 23-year Employment with Defendant BPD

4.2    Plaintiff SHAW was hired by Defendant BPD in April 1996. He was hired as a full-time police officer and assigned to patrol after serving as a reserve officer from 1993-1996. Plaintiff SHAW has worked as a patrol officer for Defendant BPD for twenty-three (23) years without any discipline issues.

4.3    Through the course of his employment, Plaintiff SHAW has received recognition

**COMPLAINT FOR DAMAGES - 5**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

and accolades for his performance:

- Started the electronic report writing so officers no longer had to handwrite reports;
- Studied, wrote the policy, and implemented the use of digital cameras which gave Defendant BPD almost 75% savings over the use of traditional 35mm film cameras;
- Re-typed the Field Training Officer ("FTO") manual to be used by officers for the three-month FTO process;
- Reviewed LEXIPOL policies for accuracy, grammar and general policy adherence;
- Trained himself on the departments MILO (Interactive shoot no shoot computer scenarios) and has since become an expert on the equipment and training;
- Investigated and trained officers in the improper use of the internet after an officer was found to be cruising numerous pornographic websites while at work;
- Plaintiff SHAW was chosen to work with NCIS and the FBI to implement LINX, a web based interactive database for Law Enforcement across the United States. Plaintiff SHAW also discovered a loophole allowing private information to be seen without a secure log in and reported it which made the system more secure;
- Plaintiff SHAW was an active Field Training Officer;
- Plaintiff SHAW was assigned the OIC during shifts when the Sergeant was off;
- Wrote the digital photo procedure for logging digital photos in to evidence;
- Plaintiff SHAW is called when officers have issues with their MCTs or computers. This is due to Plaintiff SHAW's studying. He is routinely called on an almost a daily basis; and
- Received a Letter of Recognition from Defendant BPD dated March 9, 2018 for his technical skills and leadership.

*See* Letters of Recognition and Citizen Comments for Plaintiff SHAW.

4.4    Over the course of his career, Plaintiff SHAW has suffered from a number of medical conditions:

- **Early 2009:** Tore left bicep when he slipped on the ice at work.  L&I Injury claim filed.
- **4/9/2013:** Diagnosed with tumor on pancreas;
- **8/11/2013:** Was involved in a shooting where a fellow officer was attacked and had a female trying to stab him in the neck;
- **7/15/2014:** Had Hernia Repair surgery due to complications from the previous surgery in 2013;
- **11/23/2015:** Wife had emergency surgery for Hernia Repair;
- **12/2/2015:** Fell and broke index finger on his left hand. Plaintiff SHAW is predominantly lefthanded and, as such, the now injured left hand had previously been Plaintiff SHAW's "strong hand."

COMPLAINT FOR DAMAGES - 6

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

4.5    Prior to these health issues, Plaintiff SHAW did not have any problems with Defendant BPD.

\* \* \* \* \*

### Detailed Chronology of Key Facts

4.6    As a result of the diagnosed tumor in 2013, Plaintiff SHAW was forced to have surgery on April 15, 2013 and remained in critical care for thirty (30) days. Once he was released from the hospital, he was forced to stay home to allow his body time to recover. When Plaintiff SHAW returned to work, his doctor recommended that he wear loose clothing, like sweatpants, due to the eight (8) inch vertical incision extending from his belly button to his chest.

4.7    Plaintiff SHAW was talked to about the clothing he was wearing by Captain Tom Wolfe. Plaintiff SHAW quickly learned that the administrative personnel were unaware of the seriousness of his surgery. Plaintiff SHAW was forced to purchase loose fitting, office appropriate clothing to conform to the request.

4.8    Plaintiff SHAW returned to work as soon as he could so as not to burden Defendant BPD with his absence as well as to make sure that he did not deplete his sick leave, vacation, and comp time.

4.9    Once Plaintiff SHAW returned to full duty, he took over all his usual duties and extra projects which included some duties normally assigned to a Lieutenant or Sergeant. He attended meetings for the MCT committees, the LUG (Law Enforcement User Group), Crisis Intervention Officer, LEXIPOL DTB editor, LEXIPOL policy reviewer, MILO trainer, IBIS (Integrated Biometric Identification System) expert, Hand held Radio Project, LInX trainer and a personal project of upgrading the patrol writing room to larger high-quality computer monitors.

**COMPLAINT FOR DAMAGES - 7**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

Plaintiff SHAW also educated himself in the use of NetViewer to train officers on how to use the program.

4.10    Plaintiff SHAW was working full duty and continued with these projects. He met with Captain Burchett and explained to him that once the Corporal promotions took place, he expected these duties would be turned over to the new Corporals to take charge and continue growing each duty. As the Corporal testing process neared, Plaintiff SHAW's wife was scheduled for a hernia repair surgery.

4.11    On March 28, 2014, Plaintiff SHAW applied for a sergeant position through the promotional announcement. Plaintiff SHAW passed the promotional process and as time passed, in late 2015 then Chief of Police, Steven Strachan, made the decision to "let the list expire" when there was an opening for sergeant. This decision was made after the accusations of abusing sick leave were made against Plaintiff SHAW in 2015. Prior to these accusations, Plaintiff SHAW worked extensively with Chief Strachan on various projects. Once Plaintiff SHAW was accused of "abusing sick leave" he was suddenly overlooked, and Chief Strachan spoke very few words to Plaintiff SHAW.

4.12    In April 2015, Plaintiff SHAW was selected by then Police Chief Steven Strachan to attend Leadership Kitsap which contacted Plaintiff SHAW and provided an email describing the class information as:

> **Each year we carefully select a few emerging leaders in our community** to experience a unique year-long program unlike no other offered in the county. Founded in 1993, Leadership Kitsap grew out of a need to **infuse the local community with smart, forward-thinking leaders who were not afraid to roll up their sleeves and do the work.** Since then, the foundation has graduated more than 450 who have delivered over 78 community service projects touching over 20,000 lives.

**COMPLAINT FOR DAMAGES - 8**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

*See* Email from Defendant BPD Office Assistant Barbara Forbes RE Leadership Kitsap dated April 24, 2015.

4.13    On the day Plaintiff SHAW's wife was scheduled for surgery, November 1, 2015, Plaintiff SHAW was with his wife at the hospital when her blood pressure spiked to the point that they cancelled the surgery and had her make an emergency appointment. As a result, Plaintiff SHAW's wife was discharged and the doctor advised them that once she was stabilized, she would be in an "on call" status for her surgery. Plaintiff SHAW advised Lisa Garland in Human Resources of the change that same day.

4.14    Plaintiff SHAW's wife got the call for surgery and he subsequently started FMLA leave on November 23rd, 2015. Plaintiff SHAW notified HR Garland as soon as he knew when his wife's surgery would take place.

4.15    Knowing that Defendant BPD was shorthanded, Plaintiff SHAW was trying to minimize the effect it would have on the department. As soon as his wife was home and stabilized, Plaintiff SHAW prepared to go back to work despite his wife wanting him to stay home since she was bedridden. Plaintiff SHAW believed he could leave for work and still be home in time after shift to assist her with getting out of bed to go to the bathroom. *See* Plaintiff SHAW's FMLA Documents dated October 8, 2015.

4.16    On December 2, 2015, Plaintiff SHAW's first or second day back to work, he responded to a burglary call. Plaintiff SHAW arrived on scene and as he was walking down a set of steps, he fell and crushed his left hand. The injury was severe enough that Plaintiff SHAW immediately looked down and thought he had broken his finger. Plaintiff SHAW told his supervisor what happened after he assisted in the active call and then drove himself to the

**COMPLAINT FOR DAMAGES - 9**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

hospital. The emergency room staff looked at Plaintiff SHAW's finger and he was diagnosed with a bruised finger. Despite Plaintiff SHAW's finger being black from the bruising, he was told that he just needed time for the injury to heal.  (Plaintiff SHAW was later diagnosed with a "tuft fracture" to his index finger as well as possible permanent nerve damage to his left hand.)

4.17    Plaintiff SHAW filled out the L&I paperwork for his injury and returned home to his wife. Plaintiff SHAW's wife also fell while trying to navigate the stairs in their two-story home.  Realizing that his wife needed his assistance for even her most basic needs, Plaintiff SHAW determined that he could not continue working and risk getting injured any more. Therefore, Plaintiff SHAW decided that it would be best to go back on FMLA leave. In order to be clear that he was going to take time off via FMLA, Plaintiff SHAW went to Group Health and explained that he had crushed his finger and needed a return to duty form. Plaintiff SHAW's intent was to be released back to work before taking FMLA as he did not want to be seen as abusing time off for his injury to care for his wife.

4.18    Plaintiff SHAW and his wife spoke to the surgeon/doctor Nathan E. Conway, MD in December 2015 and explained that he and his wife own a one-story house in Arizona. Being that his wife was currently stuck upstairs in a two-story house, Plaintiff SHAW had a broken finger, and they believed it better to heal in a warm climate, Plaintiff SHAW asked about moving his wife to Arizona to complete her recovery. The doctor agreed it would be good for her to recuperate in such an environment and advised that the change was fine as long as Plaintiff SHAW was careful driving her to Arizona.

4.19    On December 7, 2015, Plaintiff SHAW took his return to duty form for his finger injury and spoke to Elena Rinonos the Patrol Office Assistant.  Plaintiff Shaw explained to her

COMPLAINT FOR DAMAGES - 10

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1  that he was going to be off on Family Medical Leave and asked her to relay it to the Sergeant and

2  Administrative Staff since no one was in the office. Plaintiff SHAW explained that he needed to

3  continue his FMLA, as his wife needed him to stay home and care for her. Plaintiff SHAW

4  spoke to Thelma Swem in Human Resources about his situation. Plaintiff SHAW then turned in

5  the FMLA paperwork and Defendant BPD approved it.

6     4.20    On or about December 10, 2015, Plaintiff SHAW and his wife left for their home

7  in Arizona. During their time in Arizona, Plaintiff SHAW was his wife's primary caretaker and

8  provided her basic assistance as she remained primarily bedridden and still needed help to sit

9
10  down to use the bathroom. Plaintiff SHAW thought nothing of being in Arizona as his leave was

11  approved by Defendant BPD and he was caring for his wife, as he said he would be.

12     4.21    While in Arizona, Plaintiff SHAW received text messages from Sgt. Mike Davis

13  asking him if he was "in Arizona for the holidays?". Plaintiff SHAW replied and told him that he

14  was in Arizona watching his wife who was high on medication.

15
16
17
18
19                             
20
21
22
23
24
25
26
**COMPLAINT FOR DAMAGES - 11**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

4.22    On December 30, 2015 Plaintiff SHAW returned to work after his wife was feeling better and his FMLA leave was up. That day, Plaintiff SHAW was called by his wife and had to leave work due to her still having pain.  Upon returning to work, Plaintiff SHAW noticed that Sgt. Mike Davis was acting oddly around him. Therefore, Plaintiff SHAW went into his office and asked him what was wrong. Plaintiff SHAW learned that Sgt. Davis had his holiday vacation cancelled as a result of Plaintiff SHAW's FMLA leave. Sgt. Davis then went off on Plaintiff SHAW and proceeded to scream at him about how "pissed" he was to lose his vacation time due to Plaintiff SHAW's emergency FMLA leave. Plaintiff SHAW attempted to explain what happened surrounding his wife's emergency surgery and how Defendant BPD was wrong to cancel his vacation.

4.23    Following this incident, Plaintiff SHAW noticed a change at work and he was continuously questioned about his use of FMLA. Plaintiff SHAW was even told by a fellow Officer that Sgt. Davis was "pissed" because his Christmas vacation/leave was cancelled. Plaintiff SHAW was told by Officer B. Hall that people thought he was "milking" his finger injury. To this day, Plaintiff SHAW is still experiencing pain and numbness in his left hand and still has major discoloration of his fingers when exposed to cold temperatures, all as a result of his finger injury.

4.24    Plaintiff SHAW continued hearing comments about his "sick leave abuse". He was continuously trying to explain to coworkers that he was not out on sick leave but was on FMLA per his wife's doctor's recommendation, which Defendant BPD was aware of and approved. When the questioning reached a point of harassment, Plaintiff SHAW was in training and decided to speak to Human Resources about the harassment.  Plaintiff SHAW asked Guild

**COMPLAINT FOR DAMAGES - 12**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1   Representative Harold Whatley to accompany him to talk to Charlotte Belmore in Human

2   Resources.  Lieutenant Peter Fisher advised Plaintiff SHAW he was denied being allowed to

3   leave during training to talk to HR Belmore regarding his concerns of workplace harassment.

4       4.25    Plaintiff SHAW was instead told he could call Human Resources and speak to

5   HR Belmore, which he did during a short break in the training.  HR Belmore told Plaintiff

6   SHAW that Sgt. Davis has a right to investigate him if he was abusing sick leave. Plaintiff

7   SHAW reiterated to HR Belmore that he was on approved FMLA leave and even provided her

8   the doctor's note stating that the Arizona house was a good option for his wife's recovery. HR

9   Belmore again stated that Sgt. Davis can still question Plaintiff SHAW.  HR Belmore told

10  Plaintiff SHAW that Sgt. Davis was concerned about an inconsistency regarding who Plaintiff

11  SHAW spoke to before leaving on FMLA.  At this point, Plaintiff SHAW realized he told Sgt.

12  Davis he spoke to Lisa Garland when he actually spoke to Thelma Swem.  HR Belmore

13  instructed Plaintiff SHAW to advise Sgt. Davis of the error and then he should leave him alone.

14  However, Plaintiff SHAW continued receiving questions from Sgt. Davis asking

15  specific/detailed questions about his time off. *See* Emails between Plaintiff SHAW and Sgt.

16  Davis dated January 10, 2016.

17

18

19      4.26    On January 12, 2016, Plaintiff SHAW continued working and was still receiving

20  odd comments about his sick leave abuse. Plaintiff SHAW attended contract negotiations and the

21  subject of comp time was brought up along with the question about minimum staffing levels.

22  Afterwards, during a ten (10) minute conversation with Sgt. Mike Davis and Sgt. Kelly Meade,

23  Sgt. Kelly Meade made three (3) comments while looking at Plaintiff SHAW which were along

24  the lines of "What they need to do is go back to eight (8) hour shifts or start holding those

25

26  **COMPLAINT FOR DAMAGES - 13**                    **HENDERSON LAW GROUP, PLLC**
                                                     P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
                                                     Olympia, WA 98508
                                                     T. 360.943.7710 · Fax 360.943.2782

accountable for abusing sick leave and FMLA." Plaintiff SHAW ignored the comments and left. Around this time, Plaintiff SHAW and Officer Holt were the only two officers who had recently used or were using FMLA leave.

4.27    Plaintiff SHAW grew concerned as he was both getting questioned by and hearing comments from a number of people regarding his use of FMLA, but had not received any inquiries from HR.

4.28    On January 14, 2016, Plaintiff SHAW was assigned to attend the Corporal Promotion Assessment Center.  The promotion process is a two-step process that requires the candidates to undergo a written assessment and a Work Performance Rating from sergeants. Plaintiff SHAW was out of the state on vacation during the Assessment Center dates and used his own money to fly back from vacation, attend the Assessment Center and then fly back to where his wife was.  Plaintiff SHAW received an Assessment Center score of about 78%, and then a Sgt Input panel score of about 58% which knocked his overall score to the bottom with a score of approximately 71%.  Plaintiff SHAW's feedback from the assessors was positive with minor recommendations for improvement. *See* 2016 Candidate Feedback from Assessors.

4.29    Plaintiff SHAW questioned HR Belmore about this scoring process asking why there was a Work Performance Rating.  She first seemed unaware there was a "Sgt Input" then later emailed and advised that there appeared to be a portion which the sergeants were given the opportunity to give a score to affect the overall ranking. *See* HR Belmore's Response to Plaintiff SHAW dated January 26, 2016.

4.30    As a result of the questioning that Plaintiff SHAW continued to receive about his wife's surgery and recovery, he took it upon himself to contact his wife's doctor to confirm his

COMPLAINT FOR DAMAGES - 14

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

recommendation. On January 19, 2016, Nathan E. Conway, MD responded to Plaintiff SHAW's email and confirmed his recommendations that recovering in single-story house would be easier and safer, given that she had fallen down stairs. The doctor also confirmed that his wife's surgery was a large ventral hernia which has a longer recovery with more pain and less mobility than with other hernia repairs. *See* Plaintiff SHAW's Emails with Dr. Conway dated January 19, 2016.

4.31    This email from Dr. Conway, MD also confirms that the date of the surgery was rescheduled/changed due to medical reasons, instead of being intentional on the part of Plaintiff SHAW so that he could take leave over the holidays as had been insinuated by Sgt. Davis.

4.32    The adverse treatment that Plaintiff SHAW received went beyond his coworkers and sergeants and continued with Defendant BPD's attorney. Plaintiff SHAW has attended guild negotiations and the guild's attorney, Jim Cline, told Plaintiff SHAW that Defendant BPD's attorney made a comment that two board members were being investigated for sick leave abuse. Plaintiff SHAW was one of them even though he was on approved FMLA and also had a broken finger on top of that. Guild Member John Bogen was present when Attorney Cline made this information known to Plaintiff SHAW.

4.33    Despite this treatment, Plaintiff SHAW has continued working for the department and continued doing his duties.

4.34    Plaintiff SHAW has continued his work for Defendant BPD but continues to receive odd treatment. As of December 2017, someone had been emailing the department anonymous emails. Plaintiff SHAW is still unaware of the exact content of the emails and only knows what he has heard through rumors.   Plaintiff SHAW was not the sender of these emails

COMPLAINT FOR DAMAGES - 15

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

and does not even know who sent them.

4.35    Plaintiff SHAW did, however, write a memo as directed by Captain Tom Wolfe and turned in Officer "John R. Freedom" who had posted various Facebook comments around August/September 2016 including "Fuck the Black Lives Matter" on his Facebook page. Plaintiff SHAW explained when he pointed out to a citizen who was also aware of various comments the citizen called out the Corporal.  In response to this complaint, Plaintiff SHAW was told that it was okay for the officer to post it since the Chief had not emailed everyone to follow policy. *See* Plaintiff SHAW's Memo to Captain Wolfe dated December 1, 2017.

4.36    Plaintiff SHAW could see this was obviously larger than one person and "gave up". Plaintiff SHAW was ordered by the then Police Chief, Steven Strachan, to attend a taped interview with Captain Tom Wolfe and HR Belmore.  Plaintiff SHAW gave an honest interview and was told Chief Strachan would be instructed to send out an email to advise the department that Plaintiff SHAW was not suspect in sending the anonymous emails. Plaintiff SHAW believes the portion covering his name being cleared from this incident was done after he returned to the room and the taping had stopped.   Chief Strachan never generated any communication to let other officers know Plaintiff SHAW was not the person who had sent the anonymous emails.

4.37    Plaintiff SHAW came forward even though he had already been called a "rat". Shortly after, Officer "Freedom" advised Plaintiff SHAW that he was aware of the "rat" and commented he knew who the "rat" was.   Plaintiff SHAW then saw various posts up to and including a cartoon rat with a knife in its back.   Plaintiff SHAW was also informed the investigation of threats was discontinued after the officer posting the picture of a rat with a knife in its back "adamantly denied" having anything to do with it. Defendant BPD's response was

COMPLAINT FOR DAMAGES - 16

that Plaintiff SHAW needed to provide more information, or the investigation would be closed. The investigation was later ended after speaking to only one officer who was obviously dishonest and denied any knowledge of such a post. *See* Captain Wolfe's Memo to Plaintiff SHAW dated December 15, 2017.

4.38    Plaintiff SHAW was further admonished and given a copy of Bremerton PD's SOP 340.3.4 which covers "Duty to Report". *See* Defendant BPD's Duty to Report. The copy given to Plaintiff SHAW had four areas marked with red arrows showing the policy.  The four marked points read as follows:

- Keep the Department informed of anything that comes to your attention that affects Department operations.
- Promptly report misconduct that you see or become aware of if the issue is serious, requires supervisory correction, or could reasonably result in discipline.
- Take immediate action to stop the misconduct or unsafe acts.
- If you become aware of a fact that is relevant to an internal investigation, employee action or official proceeding, promptly report it to a supervisor.

4.39    During the time when Plaintiff SHAW was labelled by Defendant BPD as being a "rat" and then subjected to a cartoon social media post of a rat with a knife in its back, the posters (Defendant BPD Corporal Roessel and Defendant BPD Corporal Schaeffer) were promoted by Defendant BPD to the rank of Corporal, which is a Defendant BPD supervisory position with power over Plaintiff SHAW in the Defendant BPD workplace.   A closer examination of these social media "rat" posts shows several other Bremerton Police Department officers posting internet "emojis" on this social media "virtual workplace" conversation.  Three of these officers have also been promoted to the rank of Corporal after posting their comments agreeing with this hostile Facebook post against Plaintiff SHAW. *See* Facebook Rat Posting and Comments.

COMPLAINT FOR DAMAGES - 17

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

4.40   Plaintiff SHAW brought forward the information which other officers and supervisors were aware of and in response it was pointed out to make it appear he was wrong for not coming forward fast enough.  The other officers who have since been promoted have never received any counseling or discipline concerning both their knowledge and/or their participation in this online threat.

4.41   Guild President Corporal Beau Ayers called Plaintiff SHAW into a room on January 9, 2018 and started yelling at him that he needed to stop asking questions and if he has a problem, then he needs to shut up if he is not willing to disclose who gave him the information. Plaintiff SHAW disclosed to him that is was Officer Bryan Hall who told him about Ayers failing the assessment center portion of the exam and thus the request that it be looked at. Officer Hall's comment to Plaintiff SHAW was "Beau told me he failed the assessment center". He continued and told Plaintiff SHAW that everything that is being put out (the anonymous emails) points to Plaintiff SHAW. Plaintiff SHAW told Corporal Ayers he was not the person sending the emails. Corporal Ayers replied, "That's not what I'm hearing".

4.42   Plaintiff SHAW told Corporal Ayers he suspected it was Officer Bogen who recently resigned.  Corporal Ayers replied, "Well I've never heard that".  Plaintiff SHAW also told Corporal Ayers he had already been in a taped interview with Captain Wolfe and was advised Chief Strachan would put out information that Plaintiff SHAW was not the person emailing the department.  Plaintiff SHAW left the room and went into the report writing room where Officer Bryan Hall commented he was done with "it" and said he is not getting involved and does not want to be part "it".

4.43   On January 15, 2018, Plaintiff SHAW questioned the Corporal testing process

COMPLAINT FOR DAMAGES - 18

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

since two separate announcements were posted for Promotional Register for Police Corporal: the first being listed as an Assessment Center and the second with an added change to include a "Peer Review" from the current Sergeants.   As a result of the confusion, Plaintiff SHAW submitted a memo surrounding the Corporal Testing process to the Bremerton Police Officer Guild (BPOG) Board dated January 15, 2018. *See* Plaintiff SHAW's Corporal Grievance Memo dated January 15, 2018.

4.44   Part of Plaintiff SHAW's complaint was surrounding the Guild President, Beau Ayers, and the rumor going around the department that he failed the assessment center portion of the corporal exam in 2015. Again, Plaintiff SHAW was told by Officer Bryan Hall that Ayers had openly spoken about "failing" the assessment center portion, despite him getting the promotion to a Corporal. Civil Service Rules state that if an applicant fails any portion of the testing process, they are considered to have failed the entire exam, which Plaintiff SHAW was told after he failed the Work Performance Rating portion of the second exam.

4.45   Plaintiff SHAW's complaint surrounding the corporal testing process also surrounded the fact that the Work Performance Rating section of the exam, which was weighted as 40% of the candidate's overall grade lacked impartiality. This section of the exam allows coworkers, supervisors or administrative personnel's personal opinions and biases to be involved. Plaintiff SHAW argued that the impartiality is missing since some administrative personnel fraternize with their subordinates outside of the workplace and even joked online about the scores they would give for the Corporal promotion.  This fraternization defeated the impartiality of the testing process. *See* Randy Plumb's Corporal Facebook Comment.

4.46   On January 17, 2018, after submitting the complaint surrounding the Corporal

COMPLAINT FOR DAMAGES - 19

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

Testing process, Plaintiff SHAW suddenly received two complaints about his report writing. The complaints made were on reports which were for information only and did not even need to be written. Both of Plaintiff SHAW's sergeants, including Sgt. Kelly Meade, made comments to Plaintiff SHAW surrounding how someone was suddenly "nitpicking" his reports. Sgt. Meade also commented regarding how odd it was that the reports were being questioned but would not disclose who was involved. *See* Plaintiff SHAW's marked Police Reports.

4.47    Although there was a little mistake with the reported times on one of the reports, the other corrections being pointed to were not changes that needed to be made. In fact, in the report dated April 2, 2018, the suggested revisions would have changed the language to improper grammar. Plaintiff SHAW was forced to defend himself and his writing as his reports were being criticized. Plaintiff SHAW was also the only officer experiencing this type of scrutiny.

4.48    In March 2018, Plaintiff SHAW applied for the second Corporal promotion. The promotion process is a two-step process that requires the candidates undergo a promotional assessment and a work performance rating from sergeants.  Plaintiff SHAW participated in the promotional assessment on March 14th, 2018. On March 21, 2018, he received notice that he scored 89.59% on the assessment and his Work Performance Rating would be held on March 27, 2018. Plaintiff SHAW later learned that he achieved the **highest score on the written assessment**.

4.49    After his Sergeant's Work Performance Rating took place, Plaintiff SHAW was advised that he scored a 66.82%. This score was below the mandatory 70% or better required to be placed on the promotional register. Therefore, Plaintiff SHAW was not placed on the promotional register despite his exceptionally high score on the promotional assessment. In

**COMPLAINT FOR DAMAGES - 20**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

addition, the feedback Plaintiff SHAW received from the assessors regarding his Work Performance Rating was mostly positive with more Commendations than Recommendations. *See* Plaintiff SHAW's Ratings and Assessor Feedback dated April 2018.

4.50    Based on the Plaintiff SHAW's overall score on Corporal Testing was still 82.759%. This value was calculated as follows:

$$89.59\% \times .60 \text{ (weighted score)} = 53.754\%$$
$$66.82\% \times .40 \text{ (weighted score)} = 26.728\%.$$
$$\textbf{TOTAL} = \textbf{80.482\%}$$

4.51    Although this total score is most likely still higher than some of those included on the promotional register, Plaintiff SHAW was excluded as he failed the Work Performance Rating portion of the exam with a score of 66.82%. Between the two Corporal Promotion examinations, Defendant BPD changed the scoring to require a passing score of 70% on each portion of the exam to pass. The first Corporal Promotion examination did not require a minimum of 70% on the Sergeant's Assessment portion of the exam.

4.52    Interestingly, there is a very specific Work Performance Rating Process that the assessors (Sergeants) are instructed to follow. The guidelines state that the assessors must privately determine a score for each of the performance dimensions that are then averaged. A key aspect of the rating is that the assessors are only to score the candidates solely on objective criteria. *See* Work Performance Rating Process Guidelines.

4.53    Around the same time that Plaintiff SHAW applied for the second Corporal Promotion, he was in Lineup one day and Sgt. Meade made a comment to the officers present that Lt. Mike Davis told him he needed to keep an eye on two specific officers. Sgt Meade proceeded and told the present officers that the two officers were Plaintiff SHAW and Officer

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

Ditmer. Officer Ditmer and Plaintiff SHAW received the two lowest scores from the subsequent Sergeant Assessment panel during the Work Performance Rating portion of their Corporal Placement Exam.

4.54    On June 7, 2018, Plaintiff SHAW was given a Letter of Recognition from Defendant BPD dated March 9, 2018, that recognizes him for his work with the department training program. Within the letter, Sergeant Kelly Meade compliments Plaintiff SHAW for his technical skill and his willingness to step up and train others. Interim Chief of Police James Burchett also commended Plaintiff SHAW for the leadership he had taken. This letter was given to Plaintiff SHAW on June 7, 2018 and was not included in his Work Performance Rating despite being dated March 9, 2018. *See* Letter of Recognition to Plaintiff SHAW dated March 9, 2018.

4.55    On or around July 30, 2018, Plaintiff's SHAW wife asked Officer Faidley to perform a welfare check on Plaintiff SHAW when she could not get in touch with him while at a friend's house. Plaintiff SHAW's wife knew where he was supposed to be and was just making sure nothing had happened since she couldn't get in touch with him. Officer Faidley reported back that he did not see Plaintiff SHAW's truck. Officer Faidley also spoke to department members apprising them of this information.

4.56    Officer Faidley used department equipment and time to complete the welfare check on Plaintiff SHAW, even though Plaintiff SHAW was on his personal time. Subsequently, Plaintiff SHAW heard people at work talking about him at work starting rumors which are untrue, including that Plaintiff SHAW is having an affair with another woman.

4.57    The adverse treatment has recently started affecting both Plaintiff SHAW and his

COMPLAINT FOR DAMAGES - 22

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

wife, both who work for law enforcement. Plaintiff SHAW learned from his wife that Officer Faidley had attended a training at Kitsap County 911 that she also attended on August 10, 2018. After the training, Plaintiff SHAW's wife was contacted by her administration because Officer Faidley reported to them that it was his opinion she was under the influence of "something" while at the training. In reality, Plaintiff SHAW's wife had just had a close friend/co-worker die.

4.58   Officer Faidley who is a "drug recognition expert" reported his opinion both to another officer, Kitsap County Deputy Paul Woodrum, during a SWAT training exercise as well as Plaintiff SHAW's wife's employer that she was under the influence of something while she was working.  Plaintiff SHAW's wife was investigated as a result of the accusation and her employer ultimately found Officer Faidley's claims to be unfounded.

4.59   These rumors regarding Plaintiff SHAW were so widespread that Sergeant Tim Garrity was tasked with questioning Plaintiff SHAW about his personal life on August 17, 2018, including his time spent at a friend's house during his off-duty time.  Plaintiff SHAW was not on duty and in his personal vehicle visiting his friend.  Plaintiff SHAW's personal time off is being scrutinized by the department even though the time off has no negative effect to Defendant BPD.

4.60   Plaintiff SHAW told his wife about the odd questioning he continued to receive. She also remarked it was odd since she was only concerned about Plaintiff SHAW's welfare since he had not responded to her phone call.

4.61   Plaintiff SHAW was told Corporal Polonsky had been ordered to write him up by Captain Wolfe.  Corporal Polonsky refused and told Captain Wolfe that Plaintiff SHAW had not violated any department rule/regulation.  Captain Wolfe was described as angry/red faced and

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

told Corporal Polonsky to "write him up anyway." Corporal Polonsky did not write up Plaintiff SHAW.

4.62    On September 5, 2018, Defendant BPD sent out an email of the newest promotions within Defendant BPD:

- Defendant BPD promotes Randy Plumb to Captain. Captain Randy Plumb is the officer who was turned in for making comments on a derogatory Muslim post by Corporal Roessel and basically "interpreting" a statement as "Aids, aids, aids, aids, aids". This was a post of recently promoted Sergeant Roessel wearing a t-shirt with Arabic type writing and the words "Derka Derka Derka" below them. *See* Randy Plumb's Aids Facebook Comment.

- Defendant BPD also promoted two Corporals to Sergeant: Dahle Roessel and Jeff Schaeffer. Both Corporals Roessel and Schaeffer were the two supervisors who had been turned in for posting not only racially charged comments but also a direct threat (a rat with a knife in its back) towards Plaintiff SHAW on Facebook. Corporal Roessel told Captain Tom Wolfe he never posted such things, yet the screenshot shows Corporal Roessel's post with his profile picture next to it. *See* Facebook Rat Posting and Comments.

4.63    Plaintiff SHAW was concerned to return to work as the two supervisors who posted racially charged comments and were involved in a threat of violence have now been promoted to the rank of Sergeant. Plaintiff SHAW will most likely be forced to work for one of the two persons involved in a direct threat towards his safety.

4.64    After this, Defendant BPD recently sent out a training bulletin for employees to watch. The bulletin was on the topic of "Bullying". Plaintiff SHAW has obviously been a victim of bullying, yet the known bullies at Defendant BPD have since been promoted or arbitrarily cleared due to a very lackluster investigation when the concern was brought forward.

4.65    Once Plaintiff SHAW submitted a Demand Letter to Defendant BPD on December 26, 2018, he noticed that things at work got a little weird: several guild board meetings behind closed doors, multiple coworkers at Defendant BPD who would usually

COMPLAINT FOR DAMAGES - 24

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

exchange pleasantries with Plaintiff SHAW on a daily basis were no longer speaking with him, and he noticed a change in the way members of the administrative staff would look at him when he spoke. After over twenty-three (23) years as a police officer for Defendant BPD, it is no surprise that Plaintiff SHAW would notice these changes.

4.66    On February 22, 2019, Plaintiff SHAW submitted a Leave Request/Authorization to Defendant BPD requesting FMLA starting on March 1, 2019. Plaintiff SHAW's FMLA was approved by Defendant BPD. Plaintiff SHAW's understanding with Defendant BPD was that the exact length of FMLA leave was unknown as he was to help sell his father's belongings, including a small farm, and then relocate him to Arizona.

4.67    During his FMLA leave, Plaintiff SHAW has reflected back on the workplace environment that has been created at BPD, including:

✓ Being informed by fellow officers that:

   o Lt. Mike Davis has the opinion that Plaintiff SHAW is useless;
   o Sgt. D. Roessel and Sgt. J. Schaefer speak out loud about how their wishes that Plaintiff SHAW would just retire and leave; and
   o There is obviously "no love lost" between Guild President Beau Ayers and Plaintiff SHAW. On November 23, 2018, Corporal Vertefeuille stated to Plaintiff SHAW that Guild President Corporal Beau Ayers "definitely does not like you [Plaintiff SHAW]." In the past, Corporal Ayers confronted Plaintiff SHAW and was angry because Plaintiff SHAW brought forward issues and was not willing to tell who the complainants were as this was done when Plaintiff SHAW was acting as a guild board member and different persons approached him about various issues in the department.

✓ Being informed by Sgt. Meade that Lt. Mike Davis had told him that he needs to "keep an eye" on Plaintiff SHAW. This interaction was witnessed by Joshua Stottlemyer – a police officer that has since left Defendant BPD.

✓ Being told by Officer Spencer Berntsen that in November 2018 Captain Wolfe had tried to order Corporal Polonsky to "write up" Plaintiff SHAW, even though he had done nothing wrong. When Corporal Polonsky voiced that Plaintiff SHAW had done nothing

COMPLAINT FOR DAMAGES - 25

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

wrong, Captain Wolfe became "red faced" and ordered him to write Plaintiff SHAW up anyway. Corporal Polonsky refused to write Plaintiff SHAW up for no reason.

✓ After Plaintiff SHAW complained about racially charged posts and online threats from two supervisors, Defendant BPD then promoted the two supervisors to the rank of Sergeant and put them directly in charge of Plaintiff SHAW. Defendant BPD's explanation to Plaintiff SHAW regarding the lack of enforcement pursuant to Defendant BPD's Code of Conduct was that the internet posts were not done during work hours, so there was no problem. With regard to the second posting, the officer even went so far as to deny what Plaintiff SHAW reported and Defendant BPD therefore said the complaint was unfounded, despite Plaintiff SHAW having a screenshot showing the internet posting.

✓ After Plaintiff SHAW was injured at work in December 2015 and had a diagnosed issue with his left hand, he had four "fit for duty" forms filled out so that he could return to full duty. At one point following his return, he went home due to numbness (the issue has been identified and cleared for duty) and was subsequently forced to take three days off using his own sick leave in order to get another fit for duty form filled out by his doctor. Plaintiff SHAW complained to Defendant BPD that his doctor told him there was no reason for another fit for duty form. Defendant BPD then gave Plaintiff SHAW a check for approximately $540.00 and returned the three days of sick leave. Defendant BPD, however, then charged Plaintiff SHAW approximately $1,700 for crediting it back. Plaintiff SHAW was effectively "charged" $1,200 for being forced to take three days off when they were not needed. Plaintiff SHAW spent several weeks getting Defendant BPD to admit they were wrong and restore his pay and sick leave.

✓ Plaintiff SHAW's year-end pay statements demonstrate that in 2015 and 2016, he used between fifty (50) and sixty (60) hours of compensatory ("comp") time each year. After having to deal with the treatment/rumors spread about him at Defendant BPD, Plaintiff SHAW found himself working overtime and taking it as comp time to get away from being at work. This is seen in how Plaintiff SHAW's comp time usage increased to 200 to 300 hours per year in 2017 and 2018, which allowed Plaintiff SHAW to leave any time he had the opportunity. Plaintiff SHAW then worked half days as much as he could to not be around work. In fact, Plaintiff SHAW chose to be away from work by using all his overtime worked as comp time instead of taking the overtime payrate which calculates to about twenty-thousand dollars ($20,000.00) not earned over the two years. In addition, Plaintiff SHAW's sick leave usage also more or less doubled after all this started happening.

The above examples are clear evidence of Defendant BPD having created a workplace environment for Plaintiff SHAW at Defendant BPD that is chilled with a feeling of retaliation, so

COMPLAINT FOR DAMAGES - 26

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

much so that a reasonable person in Plaintiff SHAW's shoes would feel no choice but to resign under constructive discharge.

4.68     As a result, Plaintiff SHAW submitted his Notice of Constructive Discharge to Defendant BPD the morning of May 15, 2019.

**B.     Plaintiff SHAW's Emotional and Physical Repercussions**

4.69     As a result of the discrimination, hostile work environment, and retaliation inflicted on Plaintiff SHAW by Defendant BPD, Plaintiff SHAW has suffered the following emotional and physical repercussions on an ongoing basis since April 2015, continuing through today – worsening symptoms each time he is passed over for a promotion:

- Loss of Sleep;
- Depression;
- Anxiety; and
- Severe stress.

4.70     Plaintiff SHAW suffers from undue stress and anxiety as a result of the discrimination he has experienced since 2015 and the loss of his successful twenty-three (23) year career with Defendant BPD.

## V.     CAUSES OF ACTION

5.1     Plaintiff incorporates by reference each and every allegation set forth in paragraphs 1.1 through 4.70 with the same force and effect as though fully set forth herein and applies those facts to each cause of action.

**COMPLAINT FOR DAMAGES - 27**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

## A. FIRST CAUSE OF ACTION
### DISCRIMINATION BASED ON DISABLITY
### (DISPARATE TREATMENT)
#### Violation of WLAD (RCW § 49.60)

5.2    The WLAD (RCW § 49.60, *et seq.*) is a broad and remedial statute that was originally enacted in 1949 as an employment discrimination law.  Washington State enacted WLAD *fifteen years* before the Civil Rights Act of 1964.  WLAD is potent.  It contains a sweeping policy statement both denouncing discrimination in a variety of forms and mandating that the law be liberally construed for the accomplishment of the purposes thereof.  The WLAD applies to employers with eight (8) or more employees and thus applies to Defendant BPD. RCW 49.60.040(11).

5.3    The WLAD (RCW 49.60) provides the right to hold employment without discrimination on the basis of disability. RCW 49.60.030(1)(a).  The WLAD defines a disability as a:

1. Sensory, mental or physical impairment that is:

    a.  Medically cognizable or diagnosable;
    b.  Exists as a record or history; or
    c.  Is perceived to exist whether or not it does.

2. Can be temporary or permanent.
3. Can be mitigated or unmitigated by treatment.

*See* RCW 49.60.040(7).  Under the WLAD a "disability exists whether it is temporary or permanent, common or uncommon, mitigated or unmitigated, or whether or not it limits the ability to work generally or work at a particular job or whether or not it limits any other activity within the scope of [the WLAD]." RCW 49.60.040 (7)(b); *Pulcino v. Federal Express Corp.,*

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1    141 Wn.2d 629, 643, 9 P.3d 787 (2000) (overruled on other grounds by *McClarty v. Totem*

2    *Electric*, 157 Wn.2d 214, 228, 137 P.3d 844 (2006).[1]

3        5.4    Under the WLAD, "impairment" is broadly defined as, including but not limited

4    to:

5        "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical
         loss affecting one or more of the following body systems: neurological,
6        musculoskeletal, special sense organs, respiratory, including speech organs,
         cardiovascular, reproductive, digestive, genitor-urinary, hemic and lymphatic, skin,
7        and endocrine," or "[a]ny mental, developmental, traumatic, or psychological
         disorder, including but not limited to, cognitive limitation, organic brain syndrome,
8        emotional or mental illness, and specific learning disabilities."

9    RCW 49.60.040(7)(c); Washington Pattern Jury Instructions - Civil 6th WPI 330.31.01.

10   Therefore, "under the plain language of the statute, any mental or physical condition may be a

11   disability." *Clipse v. Commercial Driver Servs., Inc.*, 189 Wn. App. 776, 793, 358 P.3d 464

12

13   (2015).

14       5.5    Under the WLAD, the definitions of "disability" and "impairment" are relatively

15   broad.  Unlike the federal Americans with Disabilities Act ("ADA")[2], the WLAD does not look

16   to the effects on a "major life activity" to determine whether an impairment exists. The emphasis

17   is on the effect the impairment has on a person's life, not the nature of the medical diagnosis.

18
     *Burchfiel v. Boeing, Corp.*, 149 Wn. App. 468, 481, 205 P.3d 145 (2009). Under the WLAD's
19
     broad definition of "impairment," defined above, an impairment must be known or shown
20
21   through an interactive process in order to qualify for reasonable accommodation in employment.

22   RCW 49.60.040. Additionally, the impairment must have a substantially limiting effect upon the

23

24   [1] Up until *Pulcino*, the Washington Supreme Court used the definition of "disability" set forth in WAC 162-22-
     040(1). However, WPI 330.31 instructs practitioners to use the definition set forth in RCW 49.60.040(7)(a)-(c)
25   rather than the WAC definition.
     [2] Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12101-12213.
26

COMPLAINT FOR DAMAGES - 29                        HENDERSON LAW GROUP, PLLC
                                                  P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
                                                  Olympia, WA 98508
                                                  T. 360.943.7710 · Fax 360.943.2782

1   individual's ability to perform his or her job, the individual's ability to be considered for a job, or

2   the individual's access to equal benefits, privileges, or terms or conditions of employment. *Id.* In

3   the alternative, the employee must have put the employer on notice of the existence of an

4   impairment, and medical documentation must establish a reasonable likelihood that engaging in

5   job functions without an accommodation would aggravate the impairment to the extent that it

6   would create a substantially limiting effect. *Id.*

7       5.6     Here, Plaintiff SHAW's injuries were impairments defined as a disability under

8   the WLAD because:

9

10   **A. Tumor Removal Surgery in 2013**

11   • His tumor removal surgery and subsequent hernia repair surgery were physical
     impairments that were medically cognizable or diagnosable and existed as a record or
12   history.

13   • He put his employer (Defendant BPD) on notice of the existence of his need to have
     surgery:
14

15       ✓ April 9, 2013 Plaintiff SHAW put Defendant BPD on notice of his need to
          take Family Medical Leave due to a serious health condition. HR Garland
16        also confirmed that Plaintiff SHAW was eligible for FMLA leave.

17       ✓ April 16, 2013 Plaintiff SHAW's doctor, Brad R. MacKinnon, M.D. of
          Port Orchard Medical Center, submits the Certification of Health Care
18        Provider for Employee's Serious Health Condition (FMLA) form to
          Defendant BPD. Dr. McKinnon notes Plaintiff SHAW underwent "major
19        abdominal surgery" on April 15, 2013 and recommends a post-surgical
          recovery of 6-9 weeks, where Plaintiff SHAW would be unable to perform
20        the functions of his job. *See* Plaintiff SHAW's FMLA Docs dated April
21        2013.

22   • His tumor removal surgery had a substantially limiting effect upon his access as an
     employee of Defendant BPD to equal benefits, privileges, or terms or conditions of
23   employment:

24       ✓ When Plaintiff SHAW returned to work, he was forced to wear sweatpants
25        due to the eight (8) inch vertical incision he had from his belly button to

26
**COMPLAINT FOR DAMAGES - 30**                    HENDERSON LAW GROUP, PLLC
                                          P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
                                                      Olympia, WA 98508
                                              T. 360.943.7710 · Fax 360.943.2782

his chest. Plaintiff SHAW was talked to about the clothing he was wearing by Captain Tom Wolfe and was forced to purchase loose fitting, office appropriate clothing to conform to the request.

✓ Defendant BPD failed to accommodate his disability by refusing to allow him to wear comfortable clothing while healing.

For these reasons, Plaintiff SHAW's tumor removal surgery was an impairment defined as a disability under the WLAD.

**B. Index Finger Injury in 2015**

- His index finger injury was a physical impairment that was medically cognizable or diagnosable and existed as a record or history.

- He put his employer (Defendant BPD) on notice of the existence of his index finger injury:

    ✓ December 2, 2015 Plaintiff SHAW submitted a Self-Insurer Accident Report which describes how he fell on steps at a residence and injured his index finger on his left hand. *See* Plaintiff SHAW's Self Insurer Accident Report dated December 2, 2015.

    ✓ December 7, 2015 Plaintiff SHAW submitted his return to duty form for his finger injury and spoke to Elena Rinonos, the Patrol Office Assistant, regarding the same.

- His broken index finger injury had a substantially limiting effect upon his access as an employee of Defendant BPD to equal benefits, privileges, or terms or conditions of employment:

    ✓ On December 2, 2015, the emergency room staff diagnosed Plaintiff SHAW with a bruised index finger on his left hand and recommended that he needed time for the injury to heal. Plaintiff SHAW immediately notified Defendant BPD of his injury.

    ✓ On March 28, 2014, Plaintiff SHAW applied for a sergeant position. Despite Plaintiff SHAW being a highly qualified candidate and passing the promotional process, then Chief of Police, Steven Strachan, made the decision to "let the list expire" for the open sergeant position. This decision was made after the accusations of abusing sick leave were made against Plaintiff SHAW in 2015.

COMPLAINT FOR DAMAGES - 31

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

✓ In January 2016, Plaintiff SHAW was assigned to attend the Corporal Promotion Assessment Center where he received an Assessment Center score of about 78% and a Sgt Input panel score of about 58%, which knocked his overall score to the bottom of the group with a score of approximately 71%. Again, despite being a highly qualified candidate for the corporal position, Plaintiff SHAW was passed over for this position.

For these reasons, Plaintiff SHAW's index finger injury was an impairment defined as a disability under the WLAD.

5.7     Under the WLAD, to establish a *prima facie* claim of discrimination on the basis of disability, a plaintiff has the burden to show that she or he was:

1.  Disabled;
2.  Subject to an adverse employment action;
3.  Doing satisfactory work; and
4.  Discharged under circumstances that raise a reasonable inference of unlawful discrimination.

*Callahan v. Walla Walla Hous. Auth.*, 126 Wn. App. 812, 819-20, 110 P.3d 782 (2005). Washington Courts utilize the "substantial factor" test in analyzing discrimination under the WLAD. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 186-87, 23 P.3d 440 (2001) ("[The] *ultimate* burden in cases brought under RCW 49.60.180 is to present evidence sufficient for a trier of fact to reasonably conclude that the alleged unlawfully discriminatory animus was more likely than not a substantial factor in the adverse employment action.") (emphasis in original) (overruled in part on other grounds by *McClarty v. Totem Electric*, 157 Wn.2d 214, 137 P.3d 844 (2006); *see also: MacKay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310, 898 P.2d 284 (1995).

5.8     In the absence of direct evidence of discriminatory intent, courts employ the *McDonnell Douglas* burden-shifting framework to analyze discrimination claims at the summary judgment stage. *See: Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 150, 94 P.3d 930 (2004); *Hill v.*

COMPLAINT FOR DAMAGES - 32

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

*BCTI Income Fund-I,* 144 Wn.2d 172, 180, 186-87, 23 P.3d 440 (2001) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under this scheme, the plaintiff first must establish a *prima facie* case. *Anica v. Wal-Mart Stores, Inc.,* 120 Wn. App. 481, 488, 84 P.3d 1231 (2004). This raises a presumption of discrimination and shifts the burden to the defendant to show a legitimate non-discriminatory rationale for the employment decision. *Riehl,* 152 Wn.2d at 150. If the defendant offers such a rationale, the plaintiff must offer evidence that the employer's rationale was actually a pretext for discrimination. *Id.; Anica,* 120 Wn. App. at 488. These burdens are burdens of production, not persuasion, and they may be proved through direct or circumstantial evidence. *Scrivener v. Clark Coll.,* 181 Wn.2d 439, 445, 334 P.3d 541 (2014); *Riehl,* 152 Wn.2d at 150.

### *Defendant BPD's Pattern of Disability Disparate Discrimination*

5.9     A plaintiff may also demonstrate pretext or discriminatory intent by showing disparate treatment, *i.e.,* he was treated differently from similarly situated employees outside the protected class, whether intentionally *or unintentionally* by the employer.  The pattern of results regarding treatment of those in and outside the protected class is what the courts consider, not the intentional or unintentional mental state of the employer in carrying out those acts. *See Hume v. Am. Disposal Co.,* 124 Wash.2d 656, 668, 880 P.2d 988 (1994), *cert. denied,* 513 U.S. 1112, 115 S.Ct. 905, 130 L.Ed.2d 788 (1995).

5.10     Here, Plaintiff SHAW can clearly demonstrate pretext or discriminatory intent by showing disparate treatment.  As an employee with a disability as defined and protected by the WLAD, Plaintiff SHAW was treated differently from similarly situated employees outside the protected class (i.e., Defendant BPD employees who do not have a disability as defined and

COMPLAINT FOR DAMAGES - 33

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

protected by the WLAD).  As demonstrated by the Comparator Chart below, Defendant BPD

demonstrates a consistent pattern of treating disabled employees adversely and treating non-

disabled employees more favorably.  *See* "Plaintiff SHAW's Disability Comparator Chart

showing Disparate Treatment."

| City of Bremerton Employee | Position at City of Bremerton | Disabled or Perceived Disability? | Work Performance at City of Bremerton | Negative Treatment by City of Bremerton? | Contact Info |
|---|---|---|---|---|---|
| Frank Shaw | Police Officer | Injured left hand/index finger while on duty (12/2015) | Prior to FMLA, I was included in many duties/meetings for BPD. Once I was accused of abusing sick leave, I was no longer included up to the point of being ignored and not spoken to.<br><br>Work performance was above average with several letters of commendation, tasked with many collateral duties and no IAs during 23-year career. | I was cleared for duty on 8/28/2018. I have had to complete three more fit for duty examinations for the same injury.  The injury has never changed.  I have received negative comments that I was "milking" my broken finger which has permanent damage causing both numbness and pain. | 360-710-1085 |
| Frank Shaw | Police Officer | FMLA Leave to care for spouse after unscheduled surgery | See above | I received a text message while on FMLA asking if I was "vacationing in Arizona" while I was caring for my wife.  I have also been yelled at due to my usage of FMLA leave, I have received negative comments about abusing my FMLA leave even when I obtained secondary documentation from my wife's doctor explaining her needed | 360-710-1085 |

COMPLAINT FOR DAMAGES - 34

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

| | | | | | |
|---|---|---|---|---|---|
| | | | | care. This FMLA was in December of 2015 | |
| Jason Vertefeuille | Corporal | FMLA leave after adopting a child | Recently promoted to Corporal.<br><br>No work performance issues. | Corporal Vertefeuille has had four weeks of FMLA leave this year (2018) with no negative treatment/comments | 360-900-6832 work |
| Mike Davis | Lieutenant | FMLA leave | No perceived work performance issues.<br><br>Lt Davis did comment to several officers when he was a Sgt and would compare them to the "two Grumpy old guys in the balcony on the Muppet Show." The four officers: Shaw, Thuring, Berntsen and Clevenger. All between 45 to 55 years old. | Lt Davis used two weeks of FMLA leave (October 2018) to care for spouse with no negative treatment/comments | 360-204-2731 work |
| Steven Forbragd | Police Officer | FMLA Leave | Patrol Officer given specialty assignment in Traffic Division.<br><br>Average work performance. He has had several issues with how he spoke to the public. | Officer Forbragd used four weeks of FMLA Leave during November 2017 with no negative treatment/comments | 360-900-6644 work |
| Joshua Stottlemyer | Police Officer | FMLA Leave | Resigned from the City of Bremerton.<br><br>Good work performance, resigned after he was investigated for having inappropriate contact while working. | Used three weeks of FMLA during January/February 2017 with no negative treatment/comments<br><br>He was present when Sgt Meade commented that Lt Davis told him to "keep an eye on Shaw" just prior to the Sgt input to rank the corporals during the 2018 promotional testing | 360-689-6149 cell phone |

COMPLAINT FOR DAMAGES - 35

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

| John Bogen | Police Officer | FMLA Leave | Resigned from the City of Bremerton<br><br>Officer Bogen seemed to always be "under the microscope" at work. He subsequently resigned after being "investigated" for mishandling evidence.<br><br>Officer Bogen's work performance was well above average. Officer Bogen investigated computer related crimes and was successful in obtaining search warrants from many large technology companies such as Facebook and Twitter. | Officer Bogen applied for FMLA to care for his elderly mother. The City of Bremerton denied the FMLA. Officer Bogen was accused of "going on a date" when he attempted to care for his mother using FMLA. | 360-434-4188 |
| John Bogen | Police Officer | Work related injury | See above | Officer Bogen advised he had claimed a work-related injury and was subsequently removed from Bicycle Patrol | 360-434-4188 |
| Crystal Gray | Police Officer | Work related injury | Resigned from the City of Bremerton - subsequently filed a lawsuit and settled.<br><br>Work performance was above average. | BPD tried to keep her home instead of offering her a light duty assignment after she was injured on the job and opened an L&I claim. LT Plumb also tried to force her to come back to work before she was cleared by her doctor. | 360-509-4865 |
| Russell Holt | Police Officer | Work related injury | Resigned from the City of Bremerton.<br><br>Good work performance. | Stated he had issues with Randy Plumb and Kevin Crane (supervisors) during his time off on FMLA. Also said there were issues with HR. | 360-477-7075 |

5.11    Plaintiff SHAW meets these four elements required to establish a *prima facie*

claim of discrimination on the basis of disability against Defendant BPD.

COMPLAINT FOR DAMAGES - 36

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

### A. Tumor Removal Surgery in 2013

1. Plaintiff SHAW was disabled due to his tumor removal surgery (see above).

2. Plaintiff SHAW was subject to an adverse employment action by Defendant BPD:

   - Defendant BPD passed-over Plaintiff SHAW for promotion to a Defendant BPD sergeant's position in lieu of a non-disabled less-qualified candidate who had not taken leave (FMLA/FLA leave that was allowed Plaintiff SHAW under the law).   Plaintiff SHAW applied for the position on March 28, 2014, he was a highly qualified candidate for the position, passing Defendant BPD's promotional assessment. After accusations of Plaintiff SHAW abusing sick leave were made, then Chief of Police (Steven Strachan), made the decision to "let the list expire" for the open sergeant position.

3. Plaintiff SHAW was doing satisfactory work:

   - Plaintiff SHAW had an impeccable work performance record with Defendant BPD, zero reprimands.

4. Passed-over for promotion under circumstances that raise a reasonable inference of unlawful discrimination.

   - As demonstrated by the comparator chart above, Defendant BPD demonstrates a consistent pattern of treating disabled employees (incl. Plaintiff SHAW) adversely and treating non-disabled employees more favorably.

### B. Index Finger Injury in 2015

1. Plaintiff SHAW was disabled due to his left index finger injury (see above).

2. Plaintiff SHAW was subject to an adverse employment action by Defendant BPD:

   - In January 2016, Defendant BPD passed-over Plaintiff SHAW for promotion to a Defendant BPD corporal position in lieu of a non-disabled less-qualified candidate who had not taken leave (FMLA/FLA leave that was allowed Plaintiff SHAW under the law). Plaintiff SHAW was a highly qualified candidate for this position. Plaintiff SHAW's Sergeant added input based on discriminatory reasons against Plaintiff SHAW, which was added to Plaintiff SHAW's Assessment Center score. As a result of that input, Plaintiff

COMPLAINT FOR DAMAGES - 37

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1   SHAW's resulting overall score left him at the bottom of the group
    and he was adversely affected, being passed-over for the promotion.

2

3   3. Plaintiff SHAW was doing satisfactory work:

4       • Plaintiff SHAW had an impeccable work performance record with
          Defendant BPD, zero reprimands.

5

6   4. Passed-over for promotion under circumstances that raise a reasonable inference
       of unlawful discrimination.

7       • As demonstrated by the comparator chart above, Defendant BPD
          demonstrates a consistent pattern of treating disabled employees (incl.

8         Plaintiff SHAW) adversely and treating non-disabled employees more
          favorably.

9

10  Plaintiff SHAW meets the four elements required to establish a *prima facie* claim of

11  discrimination on the basis of disability against Defendant BPD.

12  A. **Damages for Disability Discrimination under WLAD**

13       5.12   As a result of Defendant BPD's discriminatory conduct against Plaintiff SHAW

14  and the severe emotional distress that Plaintiff SHAW suffered as a direct result, Plaintiff SHAW

15
    is entitled to recover damages under the WLAD.  Remedies for violation of the WLAD are
16
    broad. The WLAD provides that:
17

18       Any person deeming himself or herself injured by any act in violation of this chapter
         shall have a civil action in a court of competent jurisdiction to enjoin further
19       violations, or to recover the actual damages sustained by the person, or both, together
         with the cost of suit including reasonable attorneys' fees or any other appropriate
20       remedy authorized by this chapter or the United States Civil Rights Act of 1964 as
         amended...
21

22  *See* RCW 49.60.030(2).  The WLAD provides for an award of compensatory damages, economic

23  damages, recovery for personal injuries for emotional distress, humiliation, and pain and

24  suffering, as well as attorney's fees and costs.

25

26
    **COMPLAINT FOR DAMAGES - 38**                     HENDERSON LAW GROUP, PLLC
                                                     P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
                                                                 Olympia, WA 98508
                                                          T. 360.943.7710 · Fax 360.943.2782

**B.  SECOND CAUSE OF ACTION**
HOSTILE WORK EVIRONMENT BASED ON DISABILITY
Violation of WLAD (RCW § 49.60)

5.13    Defendant created and perpetuated a hostile work environment against Plaintiff on the basis of race in violation of WLAD (RCW 49.60).

5.14    Defendant BPD violated the WLAD (RCW § 49.60, *et seq.*) when its Captain (Tom Wolfe) and Sergeant (Mike Davis) directed conduct or behavior toward its employee (Plaintiff SHAW) because of Plaintiff SHAW's disability that created an intimidating, hostile, or offensive working environment for Plaintiff SHAW that became a condition of Plaintiff SHAW's work environment.

A.  **The WLAD Generally**

5.15    The WLAD (RCW § 49.60, *et seq.*) is a broad and remedial statute that was originally enacted in 1949 as an employment discrimination law.   WA State enacted WLAD *fifteen years* before the Civil Rights Act of 1964.   WLAD is potent.   It contains a sweeping policy statement both denouncing discrimination in a variety of forms and mandating that the law be liberally construed for the accomplishment of the purposes thereof.   The purposes of the WLAD are to deter and eradicate discrimination in Washington State, and in this regard, it "expresses a public policy of the highest priority." *International Union of Operating Engineers v. Port of Seattle*, 176 Wn.2d 712, 721, 295 P.3d 736 (2013) (quotations omitted). The enacted statement of legislative intent underlying the WLAD provides in part:

> [The WLAD] is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state[3] concerning civil rights. The legislature

---

[3] The constitutional reference appears to be Wash. Const. Art. IX, § 1, regarding elimination of discrimination in education "on account of race, color, caste, or sex." Article XXXI, regarding sex equality, was adopted after the constitutional reference was included in the original version of RCW § § 49.60.010. *See:* Laws of 1957, ch. 37, § 1.

COMPLAINT FOR DAMAGES - 39

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1    hereby finds and declares that practices of discrimination against any of its
     inhabitants because of race, creed, color, national origin, families with children,
2    sex, marital status, sexual orientation, age, honorably discharged veteran or military
     status, or the presence of any sensory, mental, or physical disability or the use of a
3    trained dog guide or service animal by a person with a disability are a matter of
     state concern, that such discrimination threatens not only the rights and proper
4    privileges of its inhabitants but menaces the institutions and foundation of a free
     democratic state.
5

6    *See* RCW § 49.60.010 (brackets added); *accord:* WASH. ADMIN. CODE § 162-16-200(1). The

7    WLAD is to be construed liberally to accomplish its purposes. RCW § 49.60.020.

8        5.16    The WLAD applies to employers with eight or more employees and thus applies

9    to Plaintiff SHAW's employer, Defendant BPD. *See* RCW § 49.60.040(11).  The number of

10   persons employed is determined by the names on the employer's payroll for the period covering

11   the pertinent dates. *See: Anaya v. Graham*, 89 Wn. App. 588, 591-93, 950 P.2d 16 (Div. I, 1998);

12
     *see also: Cole v. Harveyland, LLC*, 163 Wn. App. 199, 203, 258 P.3d 70 (Div. I, 2011)
13
14   (discussing *Anaya* with approval). It is immaterial whether the employer is a closely held

15   corporation, with only one shareholder. *See Patten v. Ackerman*, 68 Wn. App. 831, 834-35, 846

16   P.2d 567 (Div. III, 1993).  Family members employed by a closely held corporation count,

17   notwithstanding the exclusion of parents, spouses and children from the definition of employee

18   in RCW § 49.60.040(10). *See: Id.* at 835. Corporate officers generally count as well. *See: Id.* at

19
     835-36; *see generally:* WASH. ADMIN. CODE § 162-16-220 (regarding counting the number of
20
21   persons employed).

22       5.17    With respect to employment, protected classifications under the WLAD include

23   age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably

24

25   The other protected classifications do not appear to have constitutional stature, but were enacted pursuant to the
     Legislature's general police power.
26
     **COMPLAINT FOR DAMAGES - 40**              HENDERSON LAW GROUP, PLLC
                                                  P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
                                                  Olympia, WA 98508
                                                  T. 360.943.7710 · Fax 360.943.2782

discharged veteran or military status, the presence of any sensory, mental, or physical disability, the use of a trained dog guide or service animal by a person with disability, and actual or perceived HIV or hepatitis C infection. *See*: RCW § § 49.60.172, .174, 180, .190 & .200; *see also*: WASH. ADMIN. CODE § 162-04.010 (defining "protected class" and including those "who are treated as members of" a protected class as members of that class). In light of the anti-retaliation provision, opposition to any practice forbidden by the WLAD and participation in any proceeding under the statute are considered protected activities. *See*: RCW § 49.60.210. While a number of these protected classifications and activities would appear to be self-evident, others are specially defined.

5.18   In 1971, disability discrimination was added as a prohibited unfair practice in the WLAD (RCW § 49.60).[4] RCW § 49.60.010 provides, in part:

> The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of ... disability ...are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.

RCW § 49.60.030(1) provides that:

> The right to be free from discrimination because of ... disability ... is recognized as and declared to be a civil right. This right shall include, but not be limited to:
>
> (a) The right to obtain and hold employment without discrimination ...

RCW § 49.60.180(1)-(3) provides that it is an unfair practice for any employer to "refuse to hire any person," to "discharge or bar any person from employment," or to "discriminate against any person in compensation or in other terms or conditions of employment because of ... disability."

---

[4] *See*: Laws 1971, 1st Ex.Sess., ch. 81, § 3. *See also*: *J.S.K. Enterprises*, *supra* at 54 (discussing the 1971 amendment).

**COMPLAINT FOR DAMAGES - 41**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

**B. Elements of a Disability Harassment Claim**
*Prima Facie* Case

5.19    Two theories, "disparate impact" and "disparate treatment," are available to a plaintiff attempting to prove discrimination in employment pursuant to RCW § 49.60. In disparate treatment cases, the plaintiff must prove an unlawful discriminatory motive, meaning that the employer treats the plaintiff less favorably than others because of disability.   The disparate impact theory does not require proof of discriminatory intent because it addresses the discriminatory consequences of seemingly objective employment practices.  Plaintiff SHAW's claims against Defendant BPD fall under the "disparate treatment" theory because Defendant BPD treated Plaintiff SHAW less favorably than those Defendant BPD employees who were outside of his protected class (*i.e.*, non-disabled employees).

5.20    In disparate treatment cases like Plaintiff SHAW's, the ultimate burden of proof is carried by the plaintiff, who (under the WLAD) must at trial "present evidence sufficient for a trier of fact to reasonably conclude that the alleged unlawfully discriminatory animus was more likely than not a substantial factor in the adverse employment action." *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 186–87, 23 P.3d 440 (2001) (*quoting Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 311 (1995); *citing Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 491, 859 P.2d 26 (1993), *amended*, 122 Wn.2d 483, 865 P.2d 507 (1994); *Fulton v. State, Dept. of Soc. & Health Services*, 169 Wn.App. 137, 149–50, 279 P.3d 500, 507–08 (Div. II, 2012). A "substantial factor" means that the protected characteristic was a significant motivating factor bringing about the employer's decision. *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 444, 334 P.3d 541, 545 (2014); Substantial Factor, 6A Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 330.01.01 (6th ed.).

COMPLAINT FOR DAMAGES - 42

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

5.21    In resisting a summary judgment motion, the plaintiff's burden is only to "offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Diaz v. American Tel. & Tel.*, 752 F.2d 1356, 1359 (9th Cir. 1985) (*quoting Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089 (1982)).

5.22    The plaintiff is entitled to select the method by which she or he will prove a *prima facie* case of disparate treatment. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, at 491–92, 859 P.2d 26 (1993); *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wn.App. 734, 744, 315 P.3d 610, 616 (Div. II, 2013); *Dominguez-Curry v. Nev. Transp. Dep't.*, 424 F.3d 1027, 1037 (9th Cir. 2005). Under any method of proof, the burdens on the plaintiff and defendant "are burdens of production, not of persuasion." *Barker v. Advanced Silicon Materials, LLC.*, 131 Wn.App. 616, 128 P.3d 633 (Div. III, 2006) (*citing Carle v. McChord Credit Union*, 65 Wn.App. 93, 98–102, 827 P.2d 1070 (Div. II, 1992)).

5.23    The most common methods of proof for the *prima facie* case are either by direct evidence of discrimination, or by applying the flexible framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). *Id.*, at 490–91. However, the plaintiff may choose "some other method to meet the burden of producing evidence that would allow the fact finder to find unlawful discrimination by a preponderance of the evidence." *Johnson v. Dept. of Social and Health Services*, 80 Wn.App. 212, 227, n. 21, 907 P.2d. 1223 (Div. II, 1996) (citing *Parsons v. St. Joseph's Hosp. and Health Care Ctr.*, 70 Wn.App. 804, 809, 856 P.2d 702 (Div. II, 1993)).

5.24    Under the first prong of the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, which creates a

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

presumption of discrimination. *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 446, 334 P.3d 541, 545 (2014). Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the third prong of the *McDonnell Douglas* test requires the plaintiff to produce sufficient evidence that defendant's alleged nondiscriminatory reason for the employment action was a pretext." Evidence is sufficient to overcome summary judgment if it creates a genuine issue of material fact that the employer's articulated reason was a pretext for a discriminatory purpose. *Id.*

    5.25   Not all cases fit into the *McDonnell Douglas* method of proof, but when it is used, the burden shifting is not a rigid, mechanized, or ritualistic process, but instead should be used flexibly to address the facts in different cases. *Fulton v. State, Dept. of Soc. & Health Services*, 169 Wn.App. 137, at 158-59, 279 P.3d 500, 507–08 (Div. II, 2012). Thus, the elements for a *prima facie* case are not absolute and vary based on different factual situations. *Hill*, 144 Wn.2d at 181, n.2 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1982); *McDonnell Douglas*, 411 U.S. at 802; *Grimwood v. Univ. of Puget Sound*, 110 Wn.2d 355, 363, 753 P.2d 517 (1988)). The *McDonnell Douglas* test has been stated variously. *See, e.g. Grimwood*, 110 Wn.2d at 362–64. "To state a *prima facie* case for gender discrimination in violation of Title VII and/or the WLAD, [plaintiff] a plaintiff must show at the summary judgment stage that (1) he/she belonged to a protected class; (2) he/she was qualified for the job; (3) he/she suffered an adverse employment action; and (4) similarly situated employees not in his/her protected class received more favorable treatment." *Wallace v. Grant Cty. Fire Dist. No. 5*, 2016 WL 5886880, at *7 (E.D. Wash. 2016).

COMPLAINT FOR DAMAGES - 44

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

5.26    Once the plaintiff has made out the *prima facie* case, the employer then must produce evidence of a legitimate non-discriminatory reason for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747 (1993); *Burdine*, 450 U.S. at 255–56. If the employer fails to meet this production burden, the plaintiff is entitled to an order establishing liability as a matter of law. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 70, 821 P.2d 18 (1991).

5.27    If the employer fulfills the burden of production by showing a non-discriminatory reason for the action, the plaintiff must in turn prove that the employer's articulated reasons are a mere pretext for a discriminatory purpose. "An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer." *Scrivener v. Clark Coll.*, 181 Wash. 2d 439, 446–47, 334 P.3d 541, 546 (2014); *see also Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017) ("An employee can prove pretext either: (1) directly, by showing that unlawful discrimination more likely motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable.") (internal quotation marks omitted). *But see: Farah v. Hertz Transporting, Inc.*, 196 Wash. App. 171, 177–78, 383 P.3d 552, 557 (2016) (while instruction that find employer's explanation to be is not believable might be appropriate, it was not error to refuse to give the instruction as the instructions given were adequate).[5]

---

[5] If there is no evidence of pretext, the plaintiff has not carried the burden of production and the employer is entitled to dismissal as a matter of law. *Kastanis*, 122 Wn.2d at 491 (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1011–12 (1st Cir. 1979) and *Grimwood*, 110 Wn.2d at 365); *Douglas*, 656 F.2d at 535; *Hill*, 144 Wn.2d at 185–86.

COMPLAINT FOR DAMAGES - 45

1

## C. Evidence of Employer's Intent NOT Required for Liability under WLAD

2     5.28    Evidence of intentional discrimination or even intent by the employer is <u>not</u>

3  required for establishing disparate treatment and hostile work environment claims, but rather

4  "[t]he purpose of showing disparate treatment is to create an inference of discriminatory animus

5  because direct evidence of discrimination is rarely available." *Johnson v. Department of Social*

6  *& Health Services*, 907 P.2d 1223, 1232 (*citing Carle v. McChord Credit Union*, 65 Wash.App.

7  93, 827 P.2d 1070 (1992) (affirming denial of directed verdict where no direct evidence of

8  discriminatory intent was presented)).  The Ninth Circuit (of which WA State is a part and

9

10  follows) held in *Equal Employment Opportunity Commission (EEOC) v. NEA (E.E.O.C. v.*

11  *National Educ. Ass'n., Alaska*, 422 F.3d 840 (9th Cir. 2005)) that "plaintiffs do not need to prove

12  that Harvey had a specific intent to discriminate against women or to target them 'as women,' as

13

14  the district court put it, whether sexually or otherwise." 422 F.3d at 844.  Quoting a previous

15  Ninth Circuit decision, the Court recognized that "Title VII is not a fault-based tort scheme.

16  Title VII is aimed at the consequences or effects of an employment practice **and not ... the**

17  **motivation of co-workers or employers.**" *Id.* at 844-45, *quoting Ellison v. Brady*, 924 F.2d

18  872, 880 (9th Cir. 1991) (Emphasis added) "(In *Ellison*) we held that conduct may be 'unlawful

19  sexual harassment even when harassers do not realize that their conduct creates a hostile working

20  environment.'" *Id.* at 845, *quoting Ellison*, 924 F.2d at 880.

21

22     5.29    In *Brady v. Ellison*, 924 F. 2d 872, 878 (9th Cir. 1991) the court discusses the

23  "pervasiveness" element of a hostile work environment case but in so doing, on page 878,

24  explains how the intent of the alleged harasser is irrelevant – what matters is if a reasonable

25  person in the alleged victim's shoes would find the behavior offensive:

26

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

> We therefore prefer to analyze harassment from the victim's perspective. 3A complete understanding of the victim's view requires, among other things, an analysis of the different perspectives of men and women. Conduct that many men consider unobjectionable may offend many women. *See, e.g., Lipsett v. University of Puerto Rico*, 864 F.2d 881, 898 (1st Cir. 1988) ("A male supervisor might believe, for example, that it is legitimate for him to tell a female subordinate that she has a 'great figure' or 'nice legs.' 1The female subordinate, however, may find such comments offensive"); Yates, 819 F.2d at 637, n. 2 ("men and women are vulnerable in different ways and offended by different behavior"). 2See also Ehrenreich, Pluralist Myths and Powerless Men: The Ideology of Reasonableness in Sexual Harassment Law, 99 Yale L.J. 1177, 1207-1208 (1990) (men tend to view some forms of sexual harassment as "harmless social interactions to which only overly-sensitive women would object"); Abrams, Gender Discrimination and the Transformation of Workplace Norms, 42 Vand.L.Rev. 1183, 1203 (1989) (the characteristically male view depicts sexual harassment as comparatively harmless amusement).

*See Brady v. Ellison*, 924 F. 2d 872, 878 (9th Cir. 1991). Pervasive is defined as "existing in or spreading through every part of something." *See* Merriam-Webster Dictionary (site last visited March 26, 2018) www.merriam-webster.com/dictionary/pervasive. Under 9th Circuit and WA State law, it doesn't matter if the alleged harasser thinks what he/she is doing is inoffensive and not malicious. As such, for Plaintiff SHAW to prevail on his *prima facie* case of disability harassment against Defendant BPD, it doesn't matter whether Captain Tom Wolfe and Sergeant Mike Davis (Defendant BPD) thought at the time of their harassing actions towards Plaintiff SHAW that what they were doing towards him was offensive and/or malicious.

D. **Evidence Supports Claim of Hostile Work Environment Against Defendant BPD Prima Facie Case**

5.30    Pursuant to the Washington State Law Against Discrimination (WLAD):

> "[i]t is an unfair practice for any employer ... [t]o discriminate against any person in compensation or in other terms or *conditions of employment* because of age, sex/gender, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability[.]"

COMPLAINT FOR DAMAGES - 47

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

*See* RCW § 49.60.180(3) (emphasis added).  The WLAD protects employees from hostile work environment. *See, e.g., Sangster v. Albertson's, Inc.*, 991 P.2d 674, 99 Wn.App. 156 (Wash.App. Div. 3 2000) (*citing Coville v. Cobarc Servs., Inc.*, 73 Wash.App. 433, 438, 869 P.2d 1103 (1994); *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d 401, 405, 693 P.2d 708 (1985)).  To demonstrate a hostile work environment claim, a plaintiff must prove that:

- The harassment was unwelcome;
- The harassment was because of disability;
- The harassment affected the terms or conditions of employment; and
- The harassment is imputable to the employer.

*See Domingo v. Boeing Employees' Credit Union*, 98 P.3d 1222, 124 Wn.App. 71 (Wash.App. Div. 1 2004), *citing Robel v. Roundup Corp.*, 148 Wash.2d 35, 44-45, 59 P.3d 611 (2002) and *Glasgow v. Georgia-Pac. Corp.*, 103 Wash.2d 401, 406-07, 693 P.2d 708 (1985). Here, Plaintiff SHAW will present clear evidence that he meets all four elements required for disability-based hostile work environment against Defendant BPD in violation of the WLAD (RCW § 49.60):

### 1. Sergeant Mike Davis' Conduct was Unwelcome by Plaintiff SHAW

5.31     Sergeant Mike Davis/Defendant BPD's harassment towards Plaintiff SHAW based on his disability was clearly unwelcome.  Plaintiff SHAW made it very clear on several occasions to Defendant BPD in 2015 and continuing to when he complained to HR Charlotte Belmore on January 8, 2016.  Plaintiff SHAW's HR complaint included the following details re Sergeant Mike Davis' unwelcome harassing behavior:

- Upon returning to work after his index finger injury in 2014, Plaintiff SHAW noticed that Sgt. Mike Davis was acting oddly around him. Therefore, Plaintiff SHAW went into his office and asked him what was wrong. Plaintiff SHAW learned that Sgt. Davis had his holiday vacation cancelled as a result of Plaintiff SHAW's FMLA leave. Sgt. Davis then went off on Plaintiff SHAW and proceeded to scream at him about how "pissed" he was to lose his vacation time due to Plaintiff SHAW's emergency FMLA leave. Plaintiff

COMPLAINT FOR DAMAGES - 48

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

SHAW attempted to explain what happened surrounding his wife's emergency surgery and how Defendant BPD was wrong to cancel his vacation.

✓ Following this incident, Plaintiff SHAW noticed a change at work and he was continuously questioned about his use of FMLA. Plaintiff SHAW was even told by a fellow Officer that Sgt. Davis was "pissed" because his Christmas vacation/leave was cancelled. Plaintiff SHAW was told by Officer B. Hall that people thought he was "milking" his finger injury. To this day, Plaintiff SHAW is still experiencing pain and numbness in his left hand and still has major discoloration of his fingers when exposed to cold temperatures, all as a result of his finger injury.

✓ Plaintiff SHAW continued hearing comments about his "sick leave abuse". He was continuously trying to explain to coworkers that he was not out on sick leave but was on FMLA per his wife's doctor's recommendation, which Defendant BPD was aware of and approved. When the questioning reached a point of harassment, Plaintiff SHAW was in training and decided to speak to Human Resources about the harassment.

5.32    Sgt Davis would constantly make inappropriate comments about officer's abuse of sick leave and FMLA. At the time, Plaintiff SHAW and Officer Holt were the only two officers who had recently used or were using FMLA leave.

5.33    The following employees were treated the same as Plaintiff SHAW, in terms of discrimination based on disability:

- Officer John Bogen:  Officer Bogen applied for FMLA to care for his elderly mother. Officer Bogen's FMLA was denied and he was accused of "going on a date" when he attempted to use FMLA to care for his mother
- Detective Crystal Gray:  Detective Gray stated she was treated unfairly when attempting to re-open a previous L&I claim and on FMLA.
- Officer Russell Holt:  Stated he had issues after receiving an injury while on duty. Officer Holt said he was treated unfairly by being told to "check" in with different time requirements than other employees who had been off due to an injury.

5.34    The "unwelcome" element of Plaintiff SHAW's hostile work environment claim against Defendant BPD is clearly met.

**COMPLAINT FOR DAMAGES - 49**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

**2.** <u>Harassment from Sergeant Mike Davis was *because of* Plaintiff SHAW's Disability</u>

5.35   A plaintiff may demonstrate pretext or discriminatory intent by the employer by showing disparate treatment, *i.e.*, that he was treated differently from similarly situated employees outside the protected class, whether intentionally *or unintentionally* by the employer. The pattern of results regarding treatment of those in and outside the protected class is what the courts consider, not the intentional or unintentional mental state of the employer in carrying out those acts. *See Hume v. Am. Disposal Co.*, 124 Wash.2d 656, 668, 880 P.2d 988 (1994), *cert. denied*, 513 U.S. 1112, 115 S.Ct. 905, 130 L.Ed.2d 788 (1995).   Plaintiffs have used avenues of proof similar to those used in discrimination cases involving other protected classifications, including:

- **Adverse treatment compared to non-disabled similarly situated employees.** *Marquis v. City of Spokane*, 130 Wn.2d 97, at 114-115, 922 P.2d 43 (1996); *Crownover v. State ex rel. Dept. of Transp.*, 165 Wn.App. 131, 147, 265 P.3d 971, 980 (Div. III, 2011) *review den'd*, 173 Wn.2d 1030, 274 P.3d 374 (2012); or

- **Evidence of hostility to disabled employees by the actor or decision-maker.** *Payne v. Children's Home Society*, 77 Wn.App. 507, 511–13, 892 P.2d 1102 (Div. III, 1995); *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 356-257, 172 P.3d 688 (2007) (hostility to the presence of pregnant women in the workplace suffices to prove sex discrimination).

These avenues of proof also apply in disability harassment cases, where there is the additional avenue of proof that plaintiff suffered offensive verbiage or conduct raising an un-rebutted inference that the conduct was directed at her or him because of disability. *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1165–67 (9th Cir. 2002) (plurality of *en banc* panel) (Plaintiff stated a Title VII claim because "[s]uch harassment – 'grabbing, poking, rubbing or mouthing areas of

**COMPLAINT FOR DAMAGES - 50**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

the body linked to sexuality' – is [commonly understood to be] inescapably 'because of ... sex.'")

(citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998)).

5.36    Here, although evidence of just one of the above two avenues of proof will establish that Sergeant Mike Davis' behavior towards his disabled subordinates at Defendant BPD (including Plaintiff SHAW) demonstrates his pretext (discriminatory intent) against the disabled employees, the evidence of Sergeant Mike Davis' behavior towards his disabled co-workers/subordinates demonstrates **BOTH** of these avenues of proof:

- **Adverse treatment compared to non-disabled similarly situated employees.**

    Here, the evidence shows a clear pattern of Sergeant Mike Davis treating disabled Defendant BPD employees (incl. Plaintiff SHAW) less favorably than similarly-situated non-disabled Defendant BPD employees. *See* Disability Comparator Chart above. This pattern of Sergeant Mike Davis' disparate adverse treatment against disabled employees is evidence Plaintiff SHAW's disability was one of the *motivating factors* for Sergeant Mike Davis' harassing comments and actions towards Plaintiff SHAW.

- **Evidence of hostility to disabled employees by the actor or decision-maker.**

    Here, Sergeant Mike Davis did not target non-disabled employees with their derogatory words and/or adverse actions, only disabled employees (including Plaintiff SHAW). Plaintiff SHAW's disability became his "protected class" under the WLAD when his supervisor (Sergeant Mike Davis) targeted him as a victim of his harassment *based on his disability*. Regardless of whether Sergeant Mike Davis is disabled, his inappropriate, unwelcome comments towards Plaintiff SHAW were based on his disability because the words he chose to use in those comments clearly targeted him based on his disability. See list of Sergeant Mike Davis' comments above under part one of this 4-part test: "**Sergeant Mike Davis' Conduct was Unwelcome by Plaintiff SHAW.**"

### 3.   Harassment Affected Terms or Conditions of Plaintiff SHAW's Employment

5.37    The evidence supports that Sergeant Mike Davis' unwelcome words and actions towards Plaintiff SHAW affected the terms or conditions of Plaintiff SHAW's employment at Defendant BPD. The WA State Supreme Court addressed this element in *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d 401, 405, 693 P.2d 708 (1985), stating:

COMPLAINT FOR DAMAGES - 51

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

*Casual, isolated or trivial* manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. The harassment must be *sufficiently pervasive* so as to alter the conditions of employment and *create an abusive working environment.*

See *Sangster v. Albertson's, Inc.*, 991 P.2d 674, 99 Wn.App. 156 (Wash.App. Div. 3 2000) (emphasis added) (*citing Glasgow*, 103 Wash.2d at 406, 693 P.2d 708); *see also Antonius v. King County*, 103 P.3d 729, 153 Wn.2d 256 (Wash. 2004) (*citing Glasgow*, 103 Wash.2d at 406-07, 693 P.2d 708).

5.38    Here, Sergeant Mike Davis' unwelcome, derogatory words and actions towards his disabled subordinate, Plaintiff SHAW, for three (3) years were very clearly not casual, isolated or trivial.  Sergeant Mike Davis had created a pattern over the years at Defendant BPD of harassing his disabled subordinates – Plaintiff SHAW was no different from the others.

- Sergeant Mike Davis' derogatory actions and words against his disabled subordinates were pervasive.

- Sergeant Mike Davis' derogatory actions and words against his disabled subordinates at Defendant BPD forced his disabled subordinates to endure their disability-based harassment as a condition of their employment. Upon returning to work after his index finger injury in 2014, Plaintiff SHAW noticed that Sgt. Mike Davis was acting oddly around him. Therefore, Plaintiff SHAW went into his office and asked him what was wrong. Plaintiff SHAW learned that Sgt. Davis had his holiday vacation cancelled as a result of Plaintiff SHAW's FMLA leave. Sgt. Davis then went off on Plaintiff SHAW and proceeded to scream at him about how "pissed" he was to lose his vacation time due to Plaintiff SHAW's emergency FMLA leave.

- Sergeant Mike Davis created an ongoing, pervasive, abusive working environment for his disabled subordinates (including Plaintiff SHAW).  Further, *Defendant BPD didn't appear to care that Sergeant Mike Davis had created and perpetuated such an environment*, as Defendant BPD's HR ignored verbal and written complaints made by disabled employees about Sergeant Mike Davis' disability-bashing harassment and instead looked the other way.

5.39    Sergeant Davis' consistent failure to cease the clearly unwelcome disability-based harassment he was inflicting upon Plaintiff SHAW clearly affected the terms and conditions of

COMPLAINT FOR DAMAGES - 52

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

Plaintiff SHAW's employment with Defendant BPD.  Sergeant Davis' unwelcome, ongoing, disability-based work-place behavior towards Plaintiff SHAW was not "casual, isolated or trivial," as evidenced by not only the number of times that Sergeant Davis said derogatory words to and about Plaintiff SHAW at the Defendant BPD workplace, but also the hurtful and mocking tone he used when saying the comments and the absurd (and sometimes juvenile) level of disability-bashing language Sergeant Davis chose to use in crafting his abusive comments.  Such instances include, but are not limited to:

- **See full list of Sergeant Mike Davis' comments above under part one of this 4-part test: "Sergeant Mike Davis' Conduct was Unwelcome by Plaintiff SHAW."**

5.40    Sergeant Mike Davis' 3 years of disability-based harassing acts towards Plaintiff SHAW was clearly not "casual, isolated or trivial." The pervasiveness of Sergeant Mike Davis' disability-based derogatory comments, gestures, and adverse actions towards and against his disabled subordinate employees (incl. Plaintiff SHAW) clearly affected the terms or conditions of Plaintiff SHAW's employment and therefore meets the third element required for establishing a *prima facie* case for disability-based hostile work environment.

### 4.    Sergeant Mike Davis' Actions are Imputable to Defendant BPD – Vicarious Liability

5.41    The fourth element of Plaintiff SHAW's *prima facie* case for hostile work environment against his employer, Defendant BPD, involves imputing the actions of Plaintiff SHAW's harassers (Sergeant Mike Davis) to Plaintiff SHAW's employer (Defendant BPD) under Vicarious Liability.

5.42    Vicarious Liability is a form of a strict, secondary liability that arises under the common law doctrine of agency, *respondeat superior* (the responsibility of the superior for the

COMPLAINT FOR DAMAGES - 53

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

acts of their subordinate) or, in a broader sense, the responsibility of any third party that had the "right, ability or duty to control" the activities of a violator.  For vicarious liability to attach to the employer of the harasser, the law does not require that the employer have direct knowledge of its harassing employee's abusive words/actions towards the employee who is the harassment victim. *See Religious Tech. Center v. Netcom On-Line Comm.*, 907 F. Supp. 1361 (N.D. Cal 1995) (*citing* 3 Nimmer on Copyright § 12.04(A)(1), at 12-70) (1995); Sykes, Alan O. The Boundaries of Vicarious Liability: An Economic Analysis of the Scope of Employment Rule and Related Legal Doctrines. Harvard Law Review. 101 (3): 563–609 (January 1988).

5.43    Employers may also be liable under the common law principle represented in the Latin phrase, *qui facit per alium facit per se*, which means "he who acts through another, acts himself."  It is regarded as a fundamental premise of agency law.  In *Colonial Secur., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 1159 (S.D.N.Y. 1978), it is stated that "the common law maxim *qui facit per alium facit per se*, he who acts through another acts himself operates to make the acts of an agent within the scope of his authority, in legal effect, the acts of his principal." *Qui facit per alium facit per se* is the authorized act of an agent and is equated to the principal's acts.  A principal's tort liability is based not on an agency but on the relationship of master and servant expressed in the maxim "respondent superior."  However, both rules and maxims are founded upon the principle that a duty rests upon every man in managing his/her own affairs, either by himself/herself or by his/her agents or servants. But if another person gets injured as a result of the acts, the principal is liable for the damage. *See, e.g., Butler v. Bunge Corp.*, 329 F. Supp. 47 (N.D. Miss. 1971).

COMPLAINT FOR DAMAGES - 54

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

5.44    This element is clearly met here.  Vicarious liability attaches to Defendant BPD for the unlawful acts of its employees, Sergeant Mike Davis, against Plaintiff SHAW.

5.45    Harassment is imputed to an employer in one of two ways. *See Davis v. Fred's Appliance, Inc.*, 287 P.3d 51 (Wash.App. Div. 3 2012) (*citing Glasgow*, 103 Wash.2d at 407, 693 P.2d 708); *see also Vance v. Ball State University*, 133 S. Ct. 2434 (2013).

1.  First, harassment can be imputed to the employer (Defendant BPD) if the harasser is an owner, partner, corporate officer, or manager.[6]

    **OR**

2.  Second, harassment can be imputed to the employer (Defendant BPD) if the harasser is the plaintiff's supervisor or co-worker and if the employer "authorized, knew, or should have known of the harassment and ... failed to take reasonably prompt and adequate corrective action."

*Id.* Regarding the second of these two scenarios, the federal Equal Employment Opportunity Commission (hereinafter, "EEOC") has noted:

> When an employer receives a complaint or otherwise learns of alleged ... harassment in the workplace, *the employer should investigate promptly and thoroughly.  The employer should take immediate and appropriate corrective action by doing whatever is necessary to end the harassment,* make the victim whole by restoring lost employment benefits or opportunities, and prevent the misconduct from recurring.  Disciplinary action against the offending supervisor or employee, ranging from reprimand to discharge, may be necessary.  Generally, the corrective action should reflect the severity of the conduct.

*See Perry v. Costco Wholesale, Inc.*, 98 P.3d 1264, 123 Wn.App. 783 (Wash.App. Div. 1 2004) (emphasis added) (*citing* U.S. EEOC, Policy Guidance on Current Issues of Harassment http://www.eeoc.gov/policy/docs/currentissues.html (site last visited Dec. 31, 2017)).

---

[6] Under WA law, harassment by a company owner, manager, partner, or corporate officer is automatically imputed to the employer. *Glasgow*, 103 Wn.2d at 405; *see also: DeWater v. State*, 130 Wn.2d 128, 134-35, 921 P.2d 1059 (1996).

COMPLAINT FOR DAMAGES - 55

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

5.46   Though only one of the above two scenarios is required to meet the fourth element in a *prima facie* case for hostile work environment, **BOTH** of these two scenarios exists here. Defendant BPD is vicariously liable for the actions of its harassing employees, and Sergeant Mike Davis, because:

1. Sergeant Mike Davis (Plaintiff SHAW's harasser) was at all times relevant a management-level supervisor at Defendant BPD.  As such, Sergeant Mike Davis qualifies as "an owner, partner, corporate officer, or manager" of Plaintiff SHAW's employer and thus liability for Sergeant Mike Davis' disability-based harassment towards Plaintiff SHAW is clearly "imputed" to Defendant BPD.

   **AND**

2. Sergeant Mike Davis' harassing behavior against Plaintiff SHAW can be imputed to Defendant BPD because Sergeant Mike Davis is Plaintiff SHAW's supervisor and Defendant BPD knew or should have known of Sergeant Mike Davis' harassment and failed to take reasonably prompt and adequate corrective action. Pattern of harassment against disabled Defendant BPD employees, Plaintiff SHAW made complaints regarding Sergeant Mike Davis' unwelcome, derogatory words/actions starting when the harassment started when he returned from his finger injury/FMLA leave in 2015 and continued to be ongoing harassment, even after Plaintiff SHAW made an HR complaint against Sergeant Mike Davis in 2016. Defendant BPD did nothing in response to address and cease Sergeant Mike Davis' harassment (as required by law). Instead Defendant BPD chose to pass-over Plaintiff SHAW for the sergeant position in 2015, the corporal position in January 2016, and the second corporal position in March 2018.

5.47   Plaintiff SHAW will present clear evidence at trial that he meets all four elements required for proving that his employer (Defendant BPD, by and through the actions of its management-level agents, Sergeant Mike Davis) created and perpetuated a pervasive disability-based hostile work environment in violation of the WLAD (RCW § 49.60).

COMPLAINT FOR DAMAGES - 56

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

### E.   Defendant BPD's Potential "Equal Opportunity Harasser" Defense is Overcome by Plaintiff SHAW's Evidence

5.48   Defendant BPD may raise the potential defense that Sergeant Mike Davis may have harassed *all* employees and is arguably "equal opportunity harasser" who may escape liability for his discriminatory acts.   This defense is distinguishable in the present case.   The evidence supports that Sergeant Mike Davis harassed Plaintiff SHAW based on his disability and on many key instances treated him less favorably than those Defendant BPD employees who are not disabled.

5.49   Under the equal opportunity harasser defense, a defendant attempts to illustrate that the alleged harasser harassed both disabled and non-disabled employees alike, and as such, a disability harassment victim is unable to satisfy the "because of disability" prima facie case requirement. *See, e.g.,* Shylah Miles, *Two Wrongs Do Not Make a Defense: Eliminating the Equal-Opportunity-Harasser Defense*, 76 WASH. L. REV. 603, 614 (2001); *Aguirre-Cervantes v. I.N.S.*, 270 F.3d 794w (9th Cir. 2001) (*citing Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999)).

5.50   The Ninth Circuit has increasingly narrowed the appropriate circumstances for the equal opportunity harasser defense, circumstances which do not exist here.   In *Aguirre-Cervantes*, 270 F.3d 794w (9th Cir. 2001), the Ninth Circuit provided an eloquent commentary on the disturbing employer behavior effectively driven by (and arguably encouraged by) the equal opportunity harasser defense.   Given courts' previously broad acceptance and application of the "equal opportunity harasser" employer defense, employers were increasingly coached by their HR leaders (and even their attorneys) that if they simply increase their harassment of

COMPLAINT FOR DAMAGES - 57

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

employees to include *both* males and females, then they escape liability under Title VII and state laws against discrimination.

5.51    The Ninth Circuit (as well as the majority of circuit courts) has held that the broad application of this employer defense to discrimination cases effectively drove and encouraged *increased* harassment by employers in the hope that they may escape liability for discrimination by harassing employees both inside and outside of a protected class.    As showcased by two Ninth Circuit opinions below, the now more narrowly applied "equal opportunity harasser" defense was found to go against the very core of why anti-harassment/anti-discrimination laws were enacted under both state and federal laws in the United States.

*Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994)

5.52    In *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994), the Ninth Circuit recognized that the Supreme Court had recently reconfirmed what it referred to as its "middle path" approach in cases like Plaintiff SHAW's where:

1. "A reasonable [person] would find that [Employer's] conduct was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

   **AND**

2. Whether [Employer], once apprised of [Employer Supervisor's] harassing behavior, failed to take adequate remedial and disciplinary action."

*See Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994) (*citing Ellison v. Brady*, 924 F.2d 872, 879, 881-83 (9th Cir.1991)).

5.53    Showboat hired Ms. Barbara Steiner to work as a Blackjack dealer at Showboat Hotel and Casino in March of 1986.  Two months later she was promoted to be the casino's first female "floorperson."  Her supervisor was Mr. Jack Trenkle, a Showboat vice-president. *See*

COMPLAINT FOR DAMAGES - 58

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

*Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994).  In 1987, Steiner complained to Showboat management that Trenkle was calling her offensive names based on her gender, such as "dumb fucking broad." *Id.*, at 1461.  Employer Trenkle was not reprimanded; rather, employee Steiner was moved to a different shift so that she would not have to be in contact with him.  After about one month, however, she decided the new shift was too inconvenient and moved back to her old shift.

5.54    Similarly, here Plaintiff SHAW repeatedly communicated to Sergeant Mike Davis/Defendant BPD that his harassing behavior towards him was unwelcome and needed to cease.

5.55    Like supervisor Jack Trenkle in *Steiner*, Defendant BPD supervisor, Sergeant Mike Davis, was not reprimanded following Plaintiff SHAW's complaints of Sergeant Mike Davis' unwelcome, inappropriate male-bashing comments and actions.  Instead, Defendant BPD passed-over Plaintiff SHAW for higher ranking positions he was more than qualified for (sergeant and corporal) as a direct result of the input from his supervisor who was harassing him; Defendant BPD instead chose to promote less-qualified, non-disabled individuals.

5.56    In *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994). Ms. Steiner's complaint alleged sexual harassment and retaliation in violation of 42 U.S.C. Sec. 2000e et seq. ("Title VII"), constructive discharge, and intentional infliction of emotional distress.  The Ninth Circuit rejected Showboat's "equal opportunity harasser" defense and reversed the district court's grant of summary judgment for Showboat on Steiner's claims for sexual harassment and intentional infliction of emotional distress. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994). The court recognized that, "while coworkers' occasional annoying or 'merely

COMPLAINT FOR DAMAGES - 59

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

offensive' comments do not constitute sexual harassment, 'Title VII comes into play before the harassing conduct leads to a nervous breakdown." *Harris*, --- U.S. at ----, 114 S.Ct. at 370. "Sexual or gender-based conduct which is abusive, humiliating, or threatening violates Title VII even if it does not cause diagnosed psychological injury to the victim." *Id.* at ----, 114 S.Ct. at 371. "It is enough, rather, if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position."

### *Aguirre-Cervantes v. I.N.S., 270 F.3d 794w (9th Cir. 2001)*

5.57    The Ninth Circuit in *Aguirre-Cervantes v. I.N.S* further solidified its reasoning established in *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463-64 (9th Cir. 1995).  In *Steiner*, the Ninth Circuit rejected the employer's "equal opportunity harasser" defense that his harassing language directed at women was "cured" by the fact that he had also referred to men as "assholes."  The court in *Aguirre-Cervantes v. I.N.S.*, 270 F.3d 794w (9th Cir. 2001) held that "[Employee] Swinton [was not] required to prove that white employees were not subject to similar harassment." *See Aguirre-Cervantes v. I.N.S.*, 270 F.3d 794w (9th Cir. 2001).  "To suggest, as [Employer] Potomac does, *that it might escape liability because it equally harassed whites and blacks would give new meaning to equal opportunity.*" *Id.* (emphasis added). "*Potomac's status as a purported 'equal opportunity harasser' provides no escape hatch for liability.*" *Id.* "The fact that [Employer] Fosdick may have told jokes about racial or ethnic groups other than African-Americans does not excuse the fact that he racially harassed Swinton." *See Aguirre-Cervantes v. I.N.S.*, 270 F.3d 794w (9th Cir. 2001) (*citing, e.g., Steiner v. Showboat*

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

*Operating Co.*, 25 F.3d 1459, 1463-64 (9th Cir. 1995) (rejecting claim that harassing language directed at women was "cured" by the fact that harasser also referred to men as "assholes").

5.58   The court in *Aguirre-Cervantes* continued:

> *This case should serve as a reminder to employers of their obligation to keep their workplaces free of discriminatory harassment.* Although much of what happened here was characterized as 'jokes,' neither the discrimination nor the jury verdict is a laughing matter. Employee, Troy Swinton, a worker in the shipping department of a cardboard company, was subject to repeated 'jokes' by co-workers featuring use of the word 'nigger' and to a continuing stream of racial slurs. He sued his former employer for racial harassment under federal and state anti-discrimination statutes, and a jury awarded him back pay, emotional distress, and punitive damages.

*See Aguirre-Cervantes v. I.N.S.*, 270 F.3d at 807 (9th Cir. 2001).

5.59   Here, like in *Aguirre-Cervantes*, if employer Defendant BPD attempts to argue that its agents, Captain Tom Wolfe and Sergeant Mike Davis, made harassing comments about non-disabled employees, they would not have evidence to support such an assertion. Further, this would not excuse clear evidence supporting that: (1) Sergeant Mike Davis more severely and pervasively harassed disabled employees (including Plaintiff SHAW) based on their disability; and (2) that his behavior presented a clear pattern of treating disabled employees adversely while favoring non-disabled employees.

F.   **Damages for Hostile Work Environment in Violation of WLAD/RCW § 49.60**

5.60   As a direct result of Defendant BPD creating, perpetuating, and failing to address Plaintiff SHAW's complaints in opposition to a hostile work environment based on his disability, as herein outlined, Plaintiff SHAW has suffered lost wages, damage to reputation, damage to future earning potential, depression, anxiety, and significant loss of enjoyment of life. Remedies for violation of the WLAD are broad. The WLAD provides that:

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin

COMPLAINT FOR DAMAGES - 61

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

further violations, or *to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees* or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended...

*See* RCW § 49.60.030(2). This includes, but is not limited to, an award for economic damages (including back pay, front pay, loss of future earnings), compensatory damages for personal injuries involving emotional distress, humiliation, pain and suffering, and loss of quality of life, as well as payment for plaintiff's attorney's fees, prejudgment interest, and costs associated with their lawsuit. Plaintiff SHAW is entitled to, and we will seek, all available remedies against Defendant BPD for the agency's violation of the WLAD. RCW § 49.60.210(2).

## C. THIRD CAUSE OF ACTION
### RETALIATION AGAINST EMPLOYEE
### OPPOSING UNFAIR PRACTICE PROTECTED BY WLAD
#### Violation of WLAD (RCW § 49.60)

5.61    Defendant BPD's conduct against Plaintiff SHAW, as herein outlined, constitutes retaliation in violation of RCW 49.60.210(1), which prohibits an employer from discriminating against an employee because he/she has opposed a discriminatory practice protected by the WLAD/RCW 49.60.

5.62    "The WLAD forbids an employer to ... discriminate against an employee in retaliation for his/her 'oppos[ing] any practices forbidden by [RCW 49.60]' or for filing a charge, testifying, or assisting in a discrimination proceeding." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing* RCW 49.60.210(1); *Milligan v. Thompson*, 110 Wn.App. 628, 638, 42 P.3d 418 (2002)).

COMPLAINT FOR DAMAGES - 62

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

*McDonnell Douglas Burden-Shifting Scheme for Retaliation*

5.63    In determining whether an employer has retaliated against an employee in violation of the WLAD, Washington courts apply the federal *McDonnell Douglas* burden-shifting scheme that the Washington Supreme Court first adopted in *Hill v. BCTI Income Fund-I* for state-law discrimination claims. *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hill v. BCTI Income Fund-I,* 144 Wash.2d 172, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.,* 157 Wash.2d 214, 137 P.3d 844 (2006)); *Renz v. Spokane Eye Clinic, P.S.,* 114 Wash.App. 611, 618, 60 P.3d 106 (2002); *Milligan v. Thompson*, 110 Wash.App. 628, 638, 42 P.3d 418 (2002).

5.64    Under this burden-shifting scheme, the employee must first establish a *prima facie* case of retaliation. *See Short*, 279 P.3d 902 (*citing Renz*, 114 Wash.App. at 618, 60 P.3d 106). If the employee fails to establish a *prima facie* case, then the defendant employer is entitled to summary judgment as a matter of law. *Id.* (*citing Hill*, 144 Wash.2d at 181, 23 P.3d 440). "If, however, the employee succeeds in establishing a *prima facie* case, a 'legally mandatory, rebuttable presumption' of retaliation temporarily takes hold, and the burden shifts to the employer to produce admissible evidence of a legitimate, non-retaliatory reason for its adverse employment action." *Id.* (*citing Hill*, 144 Wash.2d at 181, 23 P.3d 440 (*quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Renz*, 114 Wash.App. at 618, 60 P.3d 106).

5.65    "If the employer fails to meet its burden, the employee is entitled to an order establishing liability as a matter of law because no issue of fact remains in the case." *Id.* (*citing*

COMPLAINT FOR DAMAGES - 63

*Hill*, 144 Wash.2d at 181-82, 23 P.3d 440; *Renz*, 114 Wash.App. at 618, 60 P.3d 106). "If the employer provides such legitimate non-retaliatory reason, then the burden shifts back to the employee to show that the employer's reason is actually pretext for what, in fact, was a retaliatory purpose for its adverse employment action." *Id.* (citing *Grimwood*, 110 Wash.2d at 364, 753 P.2d 517; *Renz*, 114 Wash.App. at 618-19, 60 P.3d 106). "If the employee fails to make this showing, however, the employer is entitled to judgment as a matter of law." *Id.* (citing *Hill*, 144 Wash.2d at 182, 23 P.3d 440; *Renz*, 114 Wash.App. at 619, 60 P.3d 106).

### *Prima Facie Case of Retaliation*

5.66    "To establish a *prima facie* case of retaliation, an employee must show that (1) she engaged in a statutorily protected activity, (2) her employer took adverse employment action against her, and (3) there is a causal link between the activity and the adverse action." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Milligan*, 110 Wash.App. at 638, 42 P.3d 418)).

I.    <u>Retaliation for Complaints of Discrimination based on Disability</u>

1. <u>Statutorily protected activity</u>

5.67    "*WA courts have ... concluded that employee complaints to a supervisor constitutes a statutorily protected activity.*" *See Id.* (citing, *e.g.*, *Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wash.App. 774, 798-99, 120 P.3d 579 (2005)) (emphasis added). "To prove a statutorily protected activity, it is not necessary that the employer's challenged conduct be unlawful." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Renz v. Spokane Eye Clinic*, P.S., 114 Wash.App. 611, 619, 60 P.3d 106 (2002)). "[A]n employee who opposes employment practices reasonably believed to be

COMPLAINT FOR DAMAGES - 64

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

discriminatory is protected by the 'opposition clause' whether or not the practice is actually discriminatory." *Id.* (*citing Renz*, 114 Wash.App. at 619, 60 P.3d 106; (*quoting Graves v. Dep't of Game*, 76 Wash.App. 705, 712, 887 P.2d 424 (1994)).

     5.68   Plaintiff SHAW will recover on his retaliation claim against Defendant BPD because, prior to Defendant BPD passing him over for promotions, Plaintiff SHAW reported the disparate treatment he was receiving as a result of the disability. *See Short v. Battle Ground School Dist.*, 279 P.3d 902, at 912, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Renz*, 114 Wash.App. at 619, 60 P.3d 106; *Ellis v. City of Seattle*, 142 Wash.2d 450, 460, 13 P.3d 1065 (2000) (requiring only an "objectively reasonable belief"). Plaintiff SHAW opposed Defendant BPD's illegal activity that violated RCW 49.60 (*i.e*, discrimination based on disability) each time he complained of being treated as a result of his disability:

1. When Plaintiff SHAW returned to work from his tumor removal surgery in 2013, his doctor recommended that he wear loose clothing, like sweatpants, due to the healing of his eight (8) inch vertical incision extending from his belly button to his chest. Plaintiff SHAW was talked to about the clothing he was wearing by Captain Tom Wolfe. Plaintiff SHAW was forced to purchase loose fitting, office appropriate clothing to conform to the request.

2. Upon returning to work after his index finger injury in 2015, Plaintiff SHAW noticed that Sgt. Mike Davis was acting oddly around him. Therefore, Plaintiff SHAW went into his office and asked him what was wrong. Plaintiff SHAW learned that Sgt. Davis had his holiday vacation cancelled as a result of Plaintiff SHAW's FMLA leave. Sgt. Davis then went off on Plaintiff SHAW and proceeded to scream at him about how pissed he was to lose his vacation time due to Plaintiff SHAW's emergency FMLA leave. Plaintiff SHAW attempted to explain what happened surrounding his wife's emergency surgery and how Defendant BPD was wrong to cancel his vacation.

    ✓ Following this incident, Plaintiff SHAW noticed a change at work and he was continuously questioned about his use of FMLA. Plaintiff SHAW was even told by a fellow Officer that Sgt. Davis was "pissed" because his Christmas vacation/leave was cancelled. Plaintiff SHAW was told by Officer B. Hall

COMPLAINT FOR DAMAGES - 65

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

that people thought he was "milking" his finger injury.  To this day, Plaintiff SHAW is still experiencing pain and numbness in his left hand and still has major discoloration of his fingers when exposed to cold temperatures, all as a result of his finger injury.

✓ Plaintiff SHAW continued hearing comments about his "sick leave abuse". He was continuously trying to explain to coworkers that he was not out on sick leave but was on FMLA per his wife's doctor's recommendation, which Defendant BPD was aware of and approved. When the questioning reached a point of harassment, Plaintiff SHAW was in training and decided to speak to Human Resources about the harassment.

✓ Plaintiff SHAW called Human Resources and spoke to HR Belmore. HR Belmore told Plaintiff SHAW that Sgt. Davis has a right to investigate him if he was abusing sick leave. Plaintiff SHAW reiterated to HR Belmore that he was on approved FMLA leave and even provided her the doctor's note stating that the Arizona house was a good option for his wife's recovery. HR Belmore again stated that Sgt. Davis can still question Plaintiff SHAW.

5.69    Plaintiff SHAW followed Defendant BPD's anti-discrimination policy when he complained to Defendant BPD's Human Resources regarding Sergeant Mike Davis treating him different based on his disabilities.

5.70    As set forth above, Plaintiff SHAW opposed Defendant BPD's illegal activity that violated RCW 49.60 (*i.e*, discrimination based on disability), and this meets the first prong of the 3-part test for his WLAD claim of Retaliation against Defendant BPD.

2.  Adverse Employment Action

5.71    For the second prong of the 3-part test for a WLAD claim of Retaliation, the employee must show that his/her employer took a materially adverse action against them following their opposition of illegal activity.  A materially adverse action is one that a reasonable employee in the plaintiff employee's shoes would have felt dissuaded that reasonable worker from making or supporting a complaint against that employer. An adverse employment action is not limited to demotion, termination or reduction in the complaining employee's pay, but rather

COMPLAINT FOR DAMAGES - 66

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

includes any negative treatment, "workplace transfer," or "reduction in employee's workload" against the complaining employee that would "dissuade a reasonable worker from making or supporting a complaint [against that employer]."[7]

5.72    "The employee must show that a reasonable employee would have found the challenged action materially adverse, meaning *'Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position.'" Id. (citing Tyner v. Dep't of Soc. & Health Servs.*, 137 Wn.App. 545, 565, 154 P.3d 920 (2007) (internal quotation marks omitted) (*quoting Burlington*, 548 U.S. at 71) (emphasis added).   "Federal law provides that context matters in analyzing the significance of any given act of retaliation because an 'act that would be immaterial in some situations is material in others.'" *Id. (citing Burlington*, 548 U.S. at 69; *quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005)).

5.73    Here, the adverse "tangible employment action" requirement was met for Plaintiff SHAW's claim of retaliation against Defendant BPD when Defendant BPD continued to allow Sergeant Mike Davis to investigate Plaintiff SHAW's FMLA leave despite it being previously approved by Defendant BPD.   Plaintiff SHAW was additionally passed up for a sergeant promotion in 2015 and a corporal promotion in January 2016, after being falsely accused of abusing FMLA and recovering from a broken finger which occurred while on duty as a Police Officer for Defendant BPD.

---

[7] *See Elliott v. Washington Department of Corrections*, 74137-3-I (WA State Ct. of Appeals, Div. I, 2016); *Boyd v. State*, 187 Wn.App. 1, 13, 349 P.3d 864 (Div. 2 2015) (*quoting Robel v. Roundup Corp.*, 148 Wn.2d 35, 74 n.24, 59 P.3d 611 (2002); *citing Alonso v. Qwest Commc'ns Co.*, 178 Wn.App. 734, 746, 315 P.3d 610 (2013); *Kirby v. City of Tacoma*, 124 Wn.App. 454, 465, 98 P.3d 827 (2004); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted) (*quoting Rochon v. Gonzales*, 438 F.3d 1211, 1219, 370 U.S.App.D.C. 74 (2006)).

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

3. Causal Link

5.74   The third element required for a plaintiff to establish a *prima facie* case of retaliation is that there exists a causal link between the activity and the adverse action." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Milligan*, 110 Wash.App. at 638, 42 P.3d 418)).   Washington courts have generally labeled this third element as requiring proof of a "causal connection" between the exercise of the legal right and the adverse employment action. *See Wilmot v. Kaiser Aluminum and Chem. Corp.*, 118 Wn.2d 46, 68, 821 P.2d 18, 29 (1991). However, the Washington Supreme Court has emphasized that a showing of "but for" causation is <u>not</u> required to establish a *prima facie* case of retaliation. *See: Allison, supra*, at 89 n.3. Instead, a plaintiff need only show that the protected activity was "a substantial factor" for the adverse action. *See, e.g.: Vasquez v. State*, 94 Wn. App. 976, 984, 974 P.2d 348, 352-53 (Div. III, 1999).

5.75   "Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose." *Vasauez v. State*, 94 Wn.App. 976, 985, 974 P.2d 348 (1999). "Proximity in time between the adverse action and the protected activity, coupled with evidence of satisfactory work performance and supervisory evaluations *suggests an improper motive*." *Kahn v. Salerno*, 90 Wn.App. 110, 130-31, 951 P.2d 321 (1998) (emphasis added); *see also Cornwell v. Microsoft Corp.*, 060517 WACA, 74919-6-I (WA Ct. of Appeals, Div. I, 2017).

5.76   Here, the "causal link" element for retaliation is met.   On January 8, 2016, Plaintiff SHAW opposed Defendant BPD's illegal activity that violated RCW 49.60 (*i.e,*

COMPLAINT FOR DAMAGES - 68

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

discrimination based on disability) when he complained to HR regarding his being treated differently than other officers as a result of his disability:

On January 8, 2016, Plaintiff SHAW complained to Charlotte Belmore in HR at Defendant BPD.

The adverse action causally linked to Plaintiff SHAW's January 8, 2016 complaint occurred in six parts:

1. HR Belmore responded that Sergeant Davis has a right to investigate Plaintiff SHAW if he was abusing his sick leave.

2. Plaintiff SHAW addressed the issue with Sergeant Mike Davis and admitted his mistake in reporting who he had spoken to in the office regarding his FMLA leave. However, Plaintiff SHAW continued receiving questions from Sgt. Davis asking specific questions about his time off in early January 2016.

3. During a ten (10) minute conversation with Sgt. Mike Davis and Sgt. Kelly Meade, Sgt. Kelly Meade made three (3) comments while looking at Plaintiff SHAW which were along the lines of "What they need to do is go back to eight (8) hour shifts or start holding those accountable for abusing sick leave and FMLA."

4. Plaintiff SHAW was passed over for a sergeant promotion in 2015.

5. Plaintiff SHAW was passed over for his first corporal promotion in January 2016

6. Plaintiff SHAW has attended guild negotiations and the guild's attorney, Jim Cline, told Plaintiff SHAW that Defendant BPD's attorney made a comment that two board members were being investigated for sick leave abuse. Plaintiff SHAW was one of them even though he was on approved FMLA and also had a broken finger on top of that.

5.77    The above reasons for a causal link between Plaintiff SHAW opposing illegal activity and Defendant BPD following his complaints with adverse action *suggest an improper motive by Defendant BPD* against Plaintiff SHAW and meets the "causal link" element for Plaintiff SHAW's retaliation claim against Defendant BPD.

COMPLAINT FOR DAMAGES - 69

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

II.   Retaliation for Opposing Racially-Charged Illegal Activity

1.   Statutorily protected activity

5.78   "*WA courts have ... concluded that employee complaints to a supervisor constitutes a statutorily protected activity.*" See Id. (*citing, e.g., Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wash.App. 774, 798-99, 120 P.3d 579 (2005)) (emphasis added). "To prove a statutorily protected activity, it is not necessary that the employer's challenged conduct be unlawful." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Renz v. Spokane Eye Clinic*, P.S., 114 Wash.App. 611, 619, 60 P.3d 106 (2002)). "[A]n employee who opposes employment practices reasonably believed to be discriminatory is protected by the 'opposition clause' whether or not the practice is actually discriminatory." *Id.* (*citing Renz*, 114 Wash.App. at 619, 60 P.3d 106; (*quoting Graves v. Dep't of Game*, 76 Wash.App. 705, 712, 887 P.2d 424 (1994)).

5.79   Plaintiff SHAW will also recover on his retaliation claim against Defendant BPD because, prior to Defendant BPD passing him over for another promotion, Plaintiff SHAW reported a supervisor to Defendant BPD for posting racially-charged comments/opinions on his Facebook page. *See Short v. Battle Ground School Dist.*, 279 P.3d 902, at 912, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Renz*, 114 Wash.App. at 619, 60 P.3d 106; *Ellis v. City of Seattle*, 142 Wash.2d 450, 460, 13 P.3d 1065 (2000) (requiring only an "objectively reasonable belief"). Plaintiff SHAW opposed Defendant BPD's supervisor's illegal activity that violated RCW 49.60 (*i.e,* discrimination based on race) when he was contacted by concerned citizens regarding the racially-charged posts other Defendant BPD supervisors were posting on their public social media pages.

COMPLAINT FOR DAMAGES - 70

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

5.80    Plaintiff SHAW followed Defendant BPD's anti-racism policy when he complained to Defendant BPD regarding supervisors posting racist comments. On December 1, 2017, Plaintiff SHAW submitted a formal memo complaint summarizing what he had seen on Facebook to Captain Tom Wolfe.



5.81    As set forth above, Plaintiff SHAW followed Defendant BPD's policy when he opposed and reported the supervisor's illegal activity that violated RCW 49.60 (*i.e*, discrimination based on race); and this meets the first prong of the 3-part test for his WLAD claim of Retaliation against Defendant BPD.

2.    Adverse Employment Action

5.82    For the second prong of the 3-part test for a WLAD claim of Retaliation, the employee must show that his/her employer took a materially adverse action against them following their opposition of illegal activity. A materially adverse action is one that a reasonable employee in the plaintiff employee's shoes would have felt dissuaded that reasonable worker from making or supporting a complaint against that employer. An adverse employment action is not limited to demotion, termination or reduction in the complaining employee's pay, but rather

COMPLAINT FOR DAMAGES - 71

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

includes <u>any</u> negative treatment, "workplace transfer," or "reduction in employee's workload" against the complaining employee that would "dissuade a reasonable worker from making or supporting a complaint [against that employer]."[8]

5.83    "The employee must show that a reasonable employee would have found the challenged action materially adverse, meaning *'Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position.'" Id. (citing Tyner v. Dep't of Soc. & Health Servs.*, 137 Wn.App. 545, 565, 154 P.3d 920 (2007) (internal quotation marks omitted) (*quoting Burlington*, 548 U.S. at 71) (emphasis added).   "Federal law provides that context matters in analyzing the significance of any given act of retaliation because an 'act that would be immaterial in some situations is material in others.'" *Id.* (*citing Burlington*, 548 U.S. at 69; *quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005)).

5.84    Here, the adverse "tangible employment action" requirement was met for Plaintiff SHAW's claim of retaliation against Defendant BPD when Defendant BPD admonished Plaintiff SHAW for not coming forward or reporting the online activity fast enough.  Plaintiff SHAW was additionally passed up for another corporal promotion shortly after this in March 2018.

---

[8] *See Elliott v. Washington Department of Corrections*, 74137-3-I (WA State Ct. of Appeals, Div. I, 2016); *Boyd v. State*, 187 Wn.App. 1, 13, 349 P.3d 864 (Div. 2 2015) (*quoting Robel v. Roundup Corp.*, 148 Wn.2d 35, 74 n.24, 59 P.3d 611 (2002); *citing Alonso v. Qwest Commc'ns Co.*, 178 Wn.App. 734, 746, 315 P.3d 610 (2013); *Kirby v. City of Tacoma*, 124 Wn.App. 454, 465, 98 P.3d 827 (2004); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted) (*quoting Rochon v. Gonzales*, 438 F.3d 1211, 1219, 370 U.S.App.D.C. 74 (2006)).

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

### 3. Causal Link

5.85    The third element required for a plaintiff to establish a *prima* facie case of retaliation is that there exists a causal link between the activity and the adverse action." *See Short v. Battle Ground School Dist.*, 279 P.3d 902, 169 Wn.App. 188 (Wash.App. Div. 2 2012) (*citing Milligan*, 110 Wash.App. at 638, 42 P.3d 418)).   Washington courts have generally labeled this third element as requiring proof of a "causal connection" between the exercise of the legal right and the adverse employment action. *See Wilmot v. Kaiser Aluminum and Chem. Corp.*, 118 Wn.2d 46, 68, 821 P.2d 18, 29 (1991). However, the Washington Supreme Court has emphasized that a showing of "but for" causation is <u>not</u> required to establish a *prima facie* case of retaliation. *See: Allison, supra,* at 89 n.3. Instead, a plaintiff need only show that the protected activity was "a substantial factor" for the adverse action. *See, e.g.: Vasquez v. State*, 94 Wn. App. 976, 984, 974 P.2d 348, 352-53 (Div. III, 1999).

5.86    "Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose." *Vasauez v. State*, 94 Wn.App. 976, 985, 974 P.2d 348 (1999). "Proximity in time between the adverse action and the protected activity, coupled with evidence of satisfactory work performance and supervisory evaluations *suggests an improper motive*." *Kahn v. Salerno*, 90 Wn.App. 110, 130-31, 951 P.2d 321 (1998) (emphasis added); *see also Cornwell v. Microsoft Corp.*, 060517 WACA, 74919-6-I (WA Ct. of Appeals, Div. I, 2017).

5.87    Here, the "causal link" element for retaliation is met.   On December 1, 2017, Plaintiff SHAW opposed Defendant BPD's supervisor's illegal activity that violated RCW 49.60

**COMPLAINT FOR DAMAGES - 73**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

(*i.e,* discrimination based on race) when he complained to Defendant BPD regarding his co-worker/officer's posting racist comments:

> On December 1, 2017, Plaintiff SHAW submitted a complaint memo to Captain Tom Wolfe of Defendant BPD.

> The adverse action causally linked to Plaintiff SHAW's December 1, 2017 complaint occurred in five parts:

> ✓ First, Plaintiff SHAW was admonished by Defendant BPD for his failure to timely report the illegal activity.

> ✓ Second, Plaintiff SHAW was passed over for his second corporal promotion in March 2018.

> ✓ Third, Officer Freedom advised Plaintiff SHAW that he was aware of the "rat" and commented he knew who the "rat" was.  Plaintiff SHAW then saw various posts up to and including a cartoon rat with a knife in its back.

> ✓ Fourth, in September 2018, the two supervisors who posted racially charged comments and were involved in a threat of violence against Plaintiff SHAW have now been promoted to the rank of Sergeant and continue in supervisory positions over Plaintiff SHAW.

> ✓ Fifth, Captain Wolfe ordered Corporal Polonsky to write Plaintiff SHAW up even if there had been no department policy violation.

5.88    The above reasons for a causal link between Plaintiff SHAW opposing illegal activity and Defendant BPD following his complaints with adverse action *suggest an improper motive by Defendant BPD* against Plaintiff SHAW and meets the "causal link" element for Plaintiff SHAW's retaliation claim against Defendant BPD.

A. **Damages for Retaliation in Violation of WLAD (RCW § 49.60)**

5.89    As a result of Defendant BPD retaliating against Plaintiff SHAW after he made complaints to Defendant BPD about supervisors posting racially charged things on social media against Defendant BPD's anti-racism policy, Plaintiff SHAW is entitled to the same damages

COMPLAINT FOR DAMAGES - 74

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

under the WLAD to which he is entitled for Defendant BPD's disability discrimination and

failure to accommodate (outlined in detail above), which provide for an award of back pay,

compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain

and suffering, loss of quality of life, and attorney's fees and costs.

### D. FOURTH CAUSE OF ACTION
FMLA/WA STATE FAMILY LEAVE ACT
Violation of FMLA (29 U.S.C. § 2615) – Retaliation

5.90    The WA Family Leave Act ("FLA") and Federal Family and Medical Leave Act

("FMLA") prohibit retaliation against an employee's exercise of FMLA leave.  The FMLA arms

employees with two types of causes of action against employers. The FMLA's "interference"

provision declares it "unlawful for any employer to interfere with, restrain, or deny the exercise

of or the attempt to exercise" any right provided by the FMLA. *See* 29 U.S.C. 2615(a)(1).  And

its "retaliation/discrimination" provisions prohibit employers from discharging or discriminating

against employees for "opposing any practice made unlawful" by the FMLA. *See* 29 U.S.C.

2615(a)(2); 2615(b).

5.91    Retaliation/discrimination claims are typically analyzed under traditional anti-

discrimination burden-shifting standards – the *McDonnell Douglas* and *Price Waterhouse*

standards.[9]  But these traditional standards do not apply to interference and FMLA retaliation

claims. Rather, when an employee asserts interference with or retaliation for his or her FMLA

entitlement, he or she generally has to show only that he or she was entitled to benefits under the

FMLA and was denied these benefits and/or treated adversely because of exercising his right to

that leave. *See Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001).  Put

---

[9] *See McDonnell Douglas v. Green* 411 U.S. 792 (1973); *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

COMPLAINT FOR DAMAGES - 75

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

simply, if an employee is denied a lawfully entitled right under the FMLA, the employer is deemed to have violated the FMLA regardless of the employer's intent. *Id.*

5.92 The relevant statutory provision is 29 U.S.C. § 2615, titled "Prohibited acts." In full, § 2615 provides:

(a) Interference with rights:

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

(b) Interference with proceedings or inquiries

It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual has:

(1) Filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;

(2) Given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

(3) Testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

*See* 29 U.S.C. § 2615.

5.93 Here, Defendant BPD violated 29 U.S.C. § 2615(a)(2) when Sgt. Mike Davis treated Plaintiff SHAW less favorably (*i.e.*, discriminated against Plaintiff SHAW) for exercising his federally protected right to FMLA and FMLA leave.

**COMPLAINT FOR DAMAGES - 76**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

5.94    Employees, like Plaintiff SHAW, who request leave or otherwise assert FMLA rights are protected under federal law. *See* 29 C.F.R. § 825.220(c); *Bachelder v. Am. W. Airlines, Inc.,* 259 F.3d 1112, 1123 n.9 (9th Cir. 2001) (citing 29 U.S.C. § 2654 and cases concluding that regulations issued pursuant to statutory delegation receive deference under *Chevron USA Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843-44 (1984)). Section 825.220(c), titled "How are employees protected who request leave or otherwise assert FMLA rights?" provides:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c). In addition, § 825.220(b) states that "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." In *Bryant v. Dollar General Corp.* 538, F.3d 394 (6th Cir. 2008), the court held that:

- The FMLA itself prohibits employers from taking adverse employment actions against employees based on the employee's exercise of FMLA leave.

- The Department of Labor's interpretation of § 2615 in § 825.220 is a reasonable interpretation of the statute and a valid exercise of agency authority.

*See Bryant,* 538, F.3d 394.

5.95    The structure of the FMLA itself and its legislative history also strongly support interpreting § 2615(a)(2) as prohibiting retaliation against employees who use FMLA leave. Section 2612(a)(1) "entitles qualifying employees to twelve weeks of unpaid leave each year if, among other things, an employee has 'a serious health condition that makes the employee unable

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

to perform the functions of the position of such employee.'" *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003) (quoting 29 U.S.C. § 2612(a)(1)(D)). After an employee takes such leave, the FMLA generally requires that, upon the employee's return, the employer restore the employee "to the position of employment held by the employee when the leave commenced" or restore the employee "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). As the Eighth Circuit has observed, "the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation an employee will return to work after the leave ends." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005). Any "right" to take unpaid leave would be utterly meaningless if the statute's bar against discrimination failed to prohibit employers from considering an employee's FMLA leave as a negative factor in employment decisions.

5.96    Interpreting § 2615(a)(2)'s ban on discrimination in a manner that would permit employers to fire employees for exercising FMLA leave would undoubtedly run contrary to Congress's purpose in passing the FMLA. *See Cavin*, 346 F.3d at 719 (noting that "Congress enacted the FMLA because . . . 'there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods'" and that "[t]he FMLA 'accommodates the important societal interest in assisting families by establishing minimum labor standard[s] for leave'") (*quoting* 29 U.S.C. § 2601(a)(4) and H.R. Rep. No. 103-8(I), 103d Cong., 1st Sess. 1993, at *21).

5.97    Indeed, the legislative history to the FMLA summarized the testimony of numerous individuals who lost their jobs after taking medical and family leave. H.R. Rep. No. 103-8(I), 103d Cong., 1st Sess. 1993, at *26 ("There are many similar stories of workers who

**COMPLAINT FOR DAMAGES - 78**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1  have been fired when their employers refused to provide an adequate leave of absence. These

2  accounts, and many others like them presented to the committee over the past eight years,

3  illustrate the human and economic costs of terminating employees at times of great family

4  need.").

5  ## A. Damages under FMLA – 29 U.S.C. §2617

6      5.98    The FMLA sets forth the following damages available to plaintiffs, like Plaintiff

7  SHAW, who are victims of retaliation under 29 U.S.C. §2615:

8
9  (A)(1) Any employer who violates section 2615 of this title shall be liable to any eligible
   employee affected for damages equal to the amount of:

10      (I)   Any wages, salary, employment benefits, or other compensation denied or
11          lost to such employee by reason of the violation; or

12      (II)  In a case in which wages, salary, employment benefits, or other
           compensation have not been denied or lost to the employee, any actual
13          monetary losses sustained by the employee as a direct result of the
           violation, such as the cost of providing care, up to a sum equal to 12
14          weeks (or 26 weeks, in a case involving leave under section 2612(a)(3)
           of this title) of wages or salary for the employee;
15
16      (ii) The interest on the amount described in clause (i) calculated at the
       prevailing rate; and

17      **(iii) An additional amount as liquidated damages equal to the sum of**
       **the amount described in clause (i) and the interest described in clause**
18      **(ii),** except that if an employer who has violated section 2615 of this title
       proves to the satisfaction of the court that the act or omission which
19      violated section 2615 of this title was in good faith and that the employer
       had reasonable grounds for believing that the act or omission was not a
20      violation of section 2615 of this title, such court may, in the discretion of
       the court, reduce the amount of the liability to the amount and interest
21      determined under clauses (i) and (ii), respectively; and

22  (B) For such equitable relief as may be appropriate, including employment,
   reinstatement, and promotion.
23

24  *See* 29 U.S.C. §2617. Plaintiff SHAW is entitled to, and we will seek, all available damages

25  pursuant to 29 U.S.C. §2617.

26
**COMPLAINT FOR DAMAGES - 79**
                                HENDERSON LAW GROUP, PLLC
                     P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
                                 Olympia, WA 98508
                         T. 360.943.7710 · Fax 360.943.2782

### E.  FIFTH CAUSE OF ACTION
### CONSTRUCTIVE DISCHARGE
Violation of WA State Common Law Tort

5.99   Plaintiff SHAW was constructively discharged by his employer, Defendant BPD, in violation of WA State law.  WA State recognizes the common law tort of constructive discharge, whereby an employee who quits can establish a wrongful termination claim by proving that his/her employer deliberately created intolerable working conditions, forcing the employee to resign. *Wahl v. Dash Point Family Dental Clinic, Inc.,* 144 Wn. App. 34, 181 P.3d 864 (Div. II, 2008). *See also: Barnett v. Sequim Valley Ranch, LLC,* 41832-1-II; Court of Appeals of Washington, Division 2 (April 30, 2013) (citing *Sneed v. Barna, 80 Wn.App. 843, 849-50, 912 P.2d 1035, review denied, 129 Wn.2d 1023 (1996)* ("If a discharge occurred, and if it was wrongful for one or more reasons, it is equally actionable whether express or constructive discharge."); *Korslund v. Dyncorp Tri Cities Services, Inc.,* 156 Wn.2d 168, 180, 125 P.3d 119 (2005) (suggesting wrongful discharge claim can be based on a constructive discharge); *Lavin v. Bon Appetit Mgmt. Co.,* 1998 U.S. Dist. LEXIS 21453, *3 (W.D. Wash. 1998) (holding that constructive discharge claim "cannot be precluded as a matter of law."). *See generally: Bulaich v. AT&T Info. Sys.,* 113 Wn.2d 254, 258-61, 778 P.2d 1031 (1989) (embracing the doctrine of constructive discharge, "[f]or we recognize that insidious acts are able to erode the Legislature's laudable goals just as effectively, and perhaps in a more demoralizing fashion, than a direct termination would otherwise accomplish."

5.100   To prove constructive discharge, a plaintiff employee (Plaintiff SHAW) "must show that the abusive working environment became so intolerable that his/her resignation qualified as a fitting response." *Pa. State Police v. Suders,* 542 U.S. 129, at 134, 124 S. Ct. 2342

COMPLAINT FOR DAMAGES - 80

(2004).  In the Ninth Circuit, a plaintiff "must show there are triable issues of fact as to whether 'a reasonable person in [his] position would have felt that [he] was forced to quit because of intolerable and discriminatory working conditions.'" *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir.1994).

5.101  Here, Lt. Mike Davis, Captain Wolfe, and Guild President Beau Ayers' ongoing discriminatory and retaliatory treatment of Plaintiff SHAW deliberately created intolerable working conditions for Plaintiff SHAW that gave him no choice but to either endure their continued discrimination/retaliation as a condition of his employment – or resign (*i.e.*, constructive discharge).  A reasonable person enduring what Plaintiff SHAW consistently endured from his employer, Defendant BPD, during the forty-one (41) months leading up to his constructive discharge on May 15, 2019 would, like Plaintiff SHAW, have no choice but to resign from his employment with Defendant BPD.

5.102  The following events of Defendant BPD's discrimination/retaliation of its employee, Plaintiff SHAW, led Plaintiff SHAW to realize that he had no choice but to resign from his employment with Defendant BPD (including, but not limited to):

- Defendant BPD discriminated against Plaintiff SHAW as a result of his disability and age. The comparator charts above show that Defendant BPD has a pattern of treating disabled, older officers differently.

- Defendant BPD discriminated against Plaintiff SHAW after he took approved FMLA leave to care for his wife. Upon returning to work, Defendant BPD accused Plaintiff SHAW of abusing his FMLA/sick leave in order to skip work.

- Defendant BPD passed over Plaintiff SHAW for a sergeant promotion in 2015 – a position he passed the promotional exam for and was highly qualified. This position was ultimately given to a younger, less-experienced officer.

COMPLAINT FOR DAMAGES - 81

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

- Plaintiff SHAW was passed over for his first corporal promotion in January 2016 – a position he passed the promotional exam for and was highly qualified. This position was ultimately given to a younger, less-experienced officer.

- Defendant BPD retaliated against Plaintiff SHAW after he reported other officers for posting racially charged posts and comments on Facebook. Not only did Defendant BPD choose not to reprimand those officers, but instead they were promoted and put in supervision of Plaintiff SHAW.

- Being informed by fellow officers that:

  o Lt. Mike Davis has the opinion that Plaintiff SHAW is useless;
  o Sgt. D. Roessel and Sgt. J. Schaefer speak out loud about how they wish that Plaintiff SHAW would just retire and leave; and
  o There is obviously "no love lost" between Guild President Beau Ayers and Plaintiff SHAW. On November 23, 2018, Corporal Vertefeuille stated to Plaintiff SHAW that Guild President Corporal Beau Ayers "definitely does not like you [Plaintiff SHAW]." In the past, Corporal Ayers confronted Plaintiff SHAW and was angry because Plaintiff SHAW brought forward issues and was not willing to tell who the complainants were as this was done when Plaintiff SHAW was acting as a guild board member and different persons approached him about various issues in the department.

- Being informed by Sgt. Meade that Lt. Mike Davis had told him that he needs to "keep an eye" on Plaintiff SHAW. This interaction was witnessed by Joshua Stottlemyer – a police officer that has since left BPD.

- Being told by Officer Berntsen that in November 2018 Captain Wolfe had tried to order Corporal Polonsky to "write up" Plaintiff SHAW, even though he had done nothing wrong. When Corporal Polonsky voiced that Plaintiff SHAW had done nothing wrong, Captain Wolfe became "red faced" and ordered him to write Plaintiff SHAW up anyway. Corporal Polonsky refused to write Plaintiff SHAW up for no reason.

- After Plaintiff SHAW complained about racially charged posts and online threats from two supervisors, BPD then promoted the two supervisors to the rank of Sergeant and put them directly in charge of Plaintiff SHAW. BPD's explanation to Plaintiff SHAW regarding the lack of enforcement pursuant to the BPD Code of Conduct was that the internet posts were not done during work hours, so there was no problem. With regard to the second posting, the officer even went so far as to deny what Plaintiff SHAW reported and BPD therefore said the complaint was unfounded, despite Plaintiff SHAW having a screenshot showing the internet posting.

COMPLAINT FOR DAMAGES - 82

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

- After Plaintiff SHAW was injured at work in December 2015 and had a diagnosed issue with his left hand, he had four "fit for duty" forms filled out so that he could return to full duty. At one point following his return, he went home due to numbness (the issue has been identified and cleared for duty) and was subsequently forced to take three days off using his own sick leave in order to get another fit for duty form filled out by his doctor. Plaintiff SHAW complained to BPD that his doctor told him there was no reason for another fit for duty form. BPD then gave Plaintiff SHAW a check for approximately $540.00 and returned the three days of sick leave. BPD, however, then charged Plaintiff SHAW approximately $1,700 for crediting it back. Plaintiff SHAW was effectively "charged" $1,200 for being forced to take three days off when they were not needed. Plaintiff SHAW spent several weeks getting BPD to admit they were wrong and restore his pay and sick leave.

- Plaintiff SHAW's year-end pay statements demonstrate that in 2015 and 2016, he used between 50 and 60 hours of compensatory ("comp") time each year. After having to deal with the treatment/rumors spread about him at BPD, Plaintiff SHAW found himself working overtime and taking it as comp time to get away from being at work. This is seen in how Plaintiff SHAW's comp time usage increased to 200 to 300 hours per year in 2017 and 2018, which allowed Plaintiff SHAW to leave any time he had the opportunity. Plaintiff SHAW then worked ½ days as much as he could to not be around work. In fact, Plaintiff SHAW chose to be away from work by using all his overtime worked as comp time instead of taking the overtime payrate which calculates to about $20,000.00 not earned over the two years. In addition, Plaintiff SHAW's sick leave usage also more or less doubled after all this started happening.

5.103   Plaintiff SHAW clearly meets the elements of proving that he was constructively discharged by his employer, Defendant BPD. Plaintiff SHAW will present at trial the above-outlined evidence that the discriminatory/retaliatory/hostile working environment created by Sgt. Mike Davis and Captain Wolfe became so intolerable for Plaintiff SHAW that his resignation qualified as a fitting response.

**B.   Damages for Constructive Discharge**

5.104   As a result of Defendant BPD constructively discharging Plaintiff SHAW in violation of WA State law, as herein outlined, Plaintiff SHAW is entitled to the same damages

COMPLAINT FOR DAMAGES - 83

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

under the WLAD to which he is entitled for Defendant BPD unlawfully retaliating against Plaintiff SHAW when he complained to Defendant BPD about the discrimination/retaliation and insisted that it stop. Defendant BPD committing the common law tort of constructive discharge against Plaintiff SHAW entitles Plaintiff SHAW to an award of back pay, front pay, impact of future earnings, compensatory damages, recovery for personal injuries for emotional distress, humiliation, pain and suffering, loss of quality of life, and attorney's fees and costs.

## VI.   CLAIM FOR RELIEF

WHEREFORE PLAINTIFF respectfully prays for relief that judgment be entered against Defendant as follows:

A.   Back pay and front pay damages for an amount to be proved at trial;

B.   Actual and/or general damages in an amount to be proven at trial.

C.   Damages for future loss, emotional distress, pain and suffering, inconvenience, mental anguish and loss of enjoyment of life and any medical expenses flowing therefrom, in an amount to be proved at trial;

D.   The Plaintiff's reasonable attorney fees;

E.   Costs of suit;

F.   Prejudgment interest at the highest lawful rate in an amount to be proved at trial;

G.   Tax consequences, including but not limited to compensation for any tax penalty associated with a recovery;

H.   Judgment in favor of the Plaintiff;

I.   Lost fringe benefits; and

J.   Such other and further relief as the Court may deem just and equitable.

COMPLAINT FOR DAMAGES - 84

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

1

## DEMAND FOR JURY TRIAL

2

Plaintiff demands trial by jury in this action of all issues so triable.

3

4          DATED this __26th__ day of __June__, 2019.

5

6                                        HENDERSON LAW GROUP, PLLC

7

8                              By: _____
                                    Stephanie Henderson Stocker
9                                   WSBA No. 33567
                                    Attorney for Plaintiff Shaw
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**COMPLAINT FOR DAMAGES - 85**

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782

## CERTIFICATION OF PLAINTIFF

FRANK SHAW, hereby certifies as follows:

I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint, know the contents thereof, and believe the same to be true. I certify and declare that the foregoing is true and correct, under penalty of perjury under the laws of the State of Washington, RCW 9A.72.085.

DATED at _CHANDLER_, _AZ_, this _21_ day of _June_, 2019.
                City                State

_____
FRANK SHAW

COMPLAINT FOR DAMAGES - 86

HENDERSON LAW GROUP, PLLC
P.O. Box 11069 · 1800 Cooper Point Rd. SW, Bldg. 1
Olympia, WA 98508
T. 360.943.7710 · Fax 360.943.2782